MR. JUSTICE MORRISON
delivered the opinion of the Court.
The Thirteenth Judicial District Court of Montana issued a judgment on August 11, 1981, affirming in part and reversing in part a March 26,1979, order of the Board of Personnel Appeals (BPA) establishing the membership of the Billings Fire Department’s bargaining unit. The BPA and the Billings Firefighters, Local #521, appeal the judgment of the District Court. We reverse the District Court in part and reinstate the March 26, 1979, order of the BPA.
*425 The Montana Public Employees Collective Bargaining Act was enacted in 1973. Pursuant to national labor policy, as set forth in the National Labor Relations Act, 29 U.S.C. section 151 et seq. (1976), the Montana Act specifically excludes supervisory and management employees from the definition of “public employee.” Only public employees are allowed to bargain collectively, section 39-31-201, MCA. Thus, supervisory and management employees were effectively denied membership in collective bargaining units.
From 1968 until the commencement of this action in 1977, the City of Billings continuously recognized Billings Firefighters Local #521 as the collective bargaining unit for all Billings firefighters except the Fire Chief and the Assistant Fire Chief. During labor negotiations in 1977, the City of Billings attempted to exclude the line batallion chiefs, specialty officers and fire captains from the bargaining unit. The City contended that those employees were either supervisory or management, as defined in the Public Employee Collective Bargaining Act, and thus ineligible for membership in a collective bargaining unit.
In response, the Union contended that the Act’s grandfather clause, section 39-31-109, MCA, by recognizing all established collective bargaining agreements, also recognized all existing bargaining units. That section provides:
“39-31-109. Existing collective bargaining agreements not affected. Nothing in this chapter shall be construed to remove recognition of established collective bargaining agreements already recognized or in existence prior to the effective date of this act.”
Union argues that the “existing agreement” recognizes Local #521 as the bargaining unit and that therefore, the unit’s composition is not controlled by section 39-31-201, MCA.
At the request of the City and the Union, the BPA conducted an administrative hearing December 15 and 16, 1977, to clarify the membership of the bargaining unit. On February 28, 1978, the hearings officer issued a recom *426 mended order concluding that “the appropriate bargaining unit in the Billings Fire Department is that unit which has been recognized by the City of Billings since 1968, i.e., all employees of the Billings Fire Department except the Chief and the Assistant Chief.” She reached this conclusion by interpreting the grandfather clause to recognize existing bargaining units as well as existing bargaining agreements, as advocated by the Union.
The City appealed the recommended order to the Board of Personnel Appeals. On July 28, 1978, the BPA issued an order remanding the case to the hearings officer with instructions to apply the facts to the following two-prong test:
(1) Is the position in question that of a supervisor or management official?
(2) If it is, does the inclusion of that position in the bargaining unit create an actual substantial conflict which results in the compromising of the interests of any party to its detriment?
This test is the result of a considered effort by the BPA to reconcile the grandfather clause, which it interprets as recognizing both bargaining units and agreements already in existence, with section 39-31-201, MCA, forbidding nonpublic employees from belonging to collective bargaining units. The BPA found that where the two sections come into conflict, the conflict must be settled in view of the policy of the Act. Section 39-31-101, MCA, states the policy:
“39-31-101. Policy. In order to promote public business by removing certain recognized sources of strife and unrest, it is the policy of the state of Montana to encourage the practice and procedure' of collective bargaining to arrive at friendly adjustment of all disputes between public employers and their employees.”
The test adopted by the BPA allows for grandfathering and also prevents conflicts intended to be avoided by the exclusion of supervisors and management officials from the unit. If the presence of a supervisory or a management position within the unit becomes the source of “strife and un *427 rest,” the position will be removed from the unit. If there is no strife or unrest, evidenced by actual substantial conflict, the grandfathered unit will be allowed to remain “as is.”
The hearings officer issued a thirty-page decision on January 19, 1979,. again concluding that the bargaining unit should remain as it has been since 1968.
To determine whether or not the positions were those of supervisors or management officials, the hearings office applied a multi-question test to each contested position. She considered the duties attendant to each position as well as the definitions of supervisor and management official found in section 39-31-103, MCA. She concluded that the line battalion chiefs, the communications officer and the fire mar-shall in the Billings Fire Department are supervisory employees. She further concluded that the captains, maintenance officer and training officer are not supervisory employees. None of the positions were found to be that of a management official.
Next, the hearings officer applied the second part of the test to those positions found to be supervisory. She determined that the presence of the positions in the unit created no actual substantial conflicts resulting in the compromising of the interests of any party to its detriment. Therefore, she allowed the supervisory positions to remain in the unit.
In reaching that conclusion, the hearings officer considered the following:
(1) Local #521 has never gone on strike.
(2) Testimony of the fire chief that in his twenty-six years on the Department, very few formal grievances had been filed.
(3)Testimony of an engineer that only one grievance had gone to arbitration since 1968.
(4) Testimony of the fire marshal that his membership in the unit had never caused problems at staff meetings with the fife chief.
(5)Testimony of the fire chief, batallion chiefs and captains that the current structure of the unit had never inter *428 fered with the efficient operation of the Department.
(6)Testimony of a captain that his membership in the unit had never interfered with the exercise of his authority.
(7)Testimony of the union’s chief negotiator for the 1977 contract that the make-up of the unit had caused no disharmony and that there were no special interest groups within the unit.
(8) Testimony of engineers and firemen that no internal conflict or disharmony existed due to the bargaining unit, structure.
(9) A petition signed by 80% of the specialty officers and 83% of the lieutenants, engineers and firefighters stating: “We the undersigned members of I.A.F.F. Local 521 are in opposition to any change in our bargaining unit.”
On March 26, 1979, the Board of Personnel Appeals adopted the recommended order of the hearings officer as its final order. The City of Billings appealed to the District Court. Following a hearing, the District Court issued an order July 28, 1981, concluding the following:

<6

“2. Supervisors and management personnel are excluded from Firefighters Local #521 Bargaining Unit and former Section 59-1615, R.C.M. [the grandfather clause], does not change the statutory exclusions.
“3. The Line Batallion Chiefs are supervisors and are excluded from Firefighters Local #521 Bargaining Unit.
“4. The Specialty Officers, Communications Officer, Maintenance Officer, Fire Marshall and Training Officer are supervisory and excluded from Firefighters Local #521 Bargaining Unit.
“5. The Fire Captains shall remain with Firefighters Local #521 Bargaining Unit.
“6. The test applied by the Board of Personnel Appeals is not logical and is arbitrary and capricious. . .”
In so holding, the District Court found requiring an actual conflict to occur before removing a supervisory or management position from the unit to be illogical as their presence *429 in the unit is inherently conflicting. In addition, it found all officers except fire captains to be supervisory personnel and excluded them from the unit.
In their appeal of the order and judgment of the District Court, the BPA and the Union present several issues for our consideration:
(1) Whether the state legislature authorized the BPA as the agency to establish the appropriate bargaining units for public employees?
(2) Whether the BPA’s interpretation of section 39-31-109, MCA, the grandfather clause, was a rational statutory construction, or whether it was illogical, arbitrary and capricious?
(3) Whether the BPA’s two-prong test reconciling the inconsistencies between two sections within the Montana Public Employees Collective Bargaining Act was arbitrary and capricious?
(4) Whether the BPA’s determination that certain employees were supervisory or management officials was clearly erroneous?
(5) Whether the BPA’s test, if rational, was correctly applied by the BPA to the facts of this case?
On cross-appeal, the City presents us with one other issue: Whether the District Court erred when it failed to find the BPA’s finding that captains were not supervisory or management officials to be clearly erroneous?
ISSUE ONE
The Montana legislature clearly authorized the BPA as the agency to establish appropriate bargaining units for public employees when it enacted section 39-31-202, MCA:
“39-31-202. Board to determine appropriate bargaining unit-factors to be considered. In order to assure employees the fullest freedom in exercising the rights guaranteed by this chapter, the board or an agent of the board shall decide the unit appropriate for the purpose of collective bargaining. . .”
*430 Like all BPA orders, an order determining the membership of a bargaining unit is subject to review by the District Court, section 39-31-409, MCA. Pursuant to section 39-31-105, MCA, judicial review of contested agency orders is governed by the Montana Administrative Procedure Act (MAPA). Section 2-4-704, MCA, sets forth the MAPA standards of review to be followed by a District Court when reviewing an agency decision. The relevant portions of section 2-4-704, MCA, state:
“(2) The court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decision are:
“(e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record;
“(f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion;
il 99
Pursuant to that statute, findings of fact by an agency have been subject to a “clearly erroneous” standard of review by the courts. Wheatland County v. Bleeker (1978), 175 Mont. 478, 575 P.2d 48. Conclusions of law are subject to an “abuse of discretion” review. These standards differ due to the agency’s expertise regarding the facts involved and the court’s expertise in interpreting and applying the law. Davis’ 4 Administrative Law Treatise, §29.01 (1958).
Both statutory and case law have employed the terms “clearly erroneous,” “abuse of discretion” and “substantial credible evidence” in form not entirely clear nor consistent. We view this as an appropriate opportunity for clarification.
Specifically, the factual findings of the BPA will be upheld if supported by substantial evidence. Section 39-31-409(4), MCA. MAPA allows factual findings to be over *431 turned when they are “clearly erroneous in view of the reliable, probative and substantial evidence on the whole record.” Section 2-4-704(2)(e), MCA. We find these tests can be harmonized. If there is substantial credible evidence in the record, the findings are not “clearly erroneous.” Under either statute the scope of judicial review is the same. If the record contains support for the factual determinations made by the agency, the courts may not weigh the evidence. They are bound by the findings of the agency.
In reviewing legal questions, the scope of review is broader. Where the intent of statutes is unclear, deference will be given to the agency’s interpretation. Ford Motor Credit Co. v. Milhollin (1980), 444 U.S. 555, 100 S.Ct. 790, 63 L.Ed.2d 22; FCC v. WNCN Listeners Guild, et al. (1981), 450 U.S. 582, 101 S.Ct. 1266, 67 L.Ed.2d 521. Where it appears that the legislative intent is clearly contrary to agency interpretation, the courts will not hesitate to reverse on the basis of “abuse of discretion.”
The determination of a bargaining unit involves mixed questions of law and fact as is hereafter discussed. In reviewing the BPA’s findings of fact and conclusions of law, we will be bound by the foregoing scope of review.
ISSUE TWO
The BPA’s interpretation of section 39-31-109, MCA, the grandfather clause, is primarily a question of law. Therefore, the reviewing court should determine whether that interpretation involves “abuse of discretion.” The clause recognizes all bargaining agreements in existence at the time of the passage of the Montana Public Employees Collective Bargaining Act. The BPA asserts that existing bargaining units should also be recognized.
The City of Billings has recognized Local #521 since 1968. The bargaining agreement reflects that in its “recognition clause.” Therefore, by recognizing the agreement, the City recognizes the Unit. The Unit does not cease to exist when the agreement ends. The Unit continues to *432 exist until a new Unit is formed and recognized. The BPA’s interpretaion of the grandfather clause is rational, does not involve an abuse of discretion and we reinstate it.
ISSUE THREE
The BPA’s interpretation of the grandfather clause previously discussed, recognizes existing bargaining units containing supervisory personnel in violation of section 39-31-201, MCA. The Board recognized that public policy supports elimination of conflict of interest within a bargaining unit and therefore, notwithstanding its interpretation of the grandfather clause, sought to foster the spirit of the Act by adopting a legal test to eliminate actual substantial conflict. The validity of such a test is a question of law.
The District Court found the presence of supervisory or management officials in the bargaining unit to be inherently conflicting. It therefore held the test to be irrational for allowing continued membership until actual substantial conflict occurs. We do not agree.
Testimony that Local #521, a bargaining unit consisting of firefighters as well, as supervisors, has had a relatively peaceful existence since 1968 indicates a lack of any inherent conflict. This does not mean that actual substantial conflict could not occur.
The test developed by the BP A is a rational, considered effort by the BPA to assure an effective bargaining unit. The test considers the policy of the act, i.e., to remove strife and unrest from bargaining units, as well as some of the factors set forth in section 39-31-202, MCA, for determining unit composition — the “history of collective bargaining” and the “desires of the employees.” The result accomplished preserves the public policy underlying the act. We find the Board’s approach to be a rational one for determining bargaining unit memberships.
*433 ISSUE FOUR
In applying the BPA’s test, the hearings officer made many findings of fact regarding the supervisory or management nature of various department positions. She applied a multi-question test to each position and considered the definitions of supervisory and management official in making her determination.
The District Court, to reverse these findings of fact, had to find the record bare of “substantial credible evidence.” We find such evidence to exist.
The District Court supplied no reason for finding the position determinations to be unsupported. Rather, it chose to substitute its findings for those of the BPA. The governing statute provides: “The court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.” Section 2-4-704(2), MCA. There is substantial, and as we have herein noted, abundant evidence to support those determinations. Therefore, we reinstate the findings of the BPA that only the line batallion chiefs, the fire marshall and the communications officer are supervisors.
On cross-appeal, the City asks us to determine whether or not the District Court erred when it failed to find the BPA’s determination that fire captains are neither supervisory nor management officials to be clearly erroneous. The District Court did not err. The hearings officer considered the duties of the captains and compared them to the duties of the supervisors and management officials set forth in section 39-31-103(3) and (4), MCA. There was substantial evidence to support the BPA’s determination.
ISSUE FIVE
Finally, the District Court held that because the presence of supervisors in a bargaining unit creates inherent conflict, the second prong of the BPA’s test was not correctly applied to the instant facts. We have already stated *434 that no inherent conflict exists within Local #521. In addition, there was a substantial amount of testimony presented to the hearings officer indicating that no actual substantial conflict exists. The hearings officer correctly applied the test to Local #521.
The order of the District Court is vacated and the March 26, 1979, order of the Board of Personnel Appeals is reinstated.
MR. CHIEF JUSTICE HASWELL and JUSTICES DALY, HARRISON, SHEA and SHEEHY, concur.