No. 83-367

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

STATE OF MONTANA, ex rel., DEPT. OF
PUBLIC SERVICE REGULATION, et al.,

Appellants,

-vs-

MONTANA IRRIGATORS, INC.,

Respondents,

and

CHAMPION INTERNATIONAL CORP., A corp.,
CONOCO, INC., a corp.; ANACONDA MINERALS
COMPANY, A Corp.; and the MONTANA POWER
COMPANY,

Intervenors.

APPEAL FROM:  District Court of the Fifth Judicial District,
In and for the County of Jefferson,
The Honorable W. W. Lessley, Judge presiding

COUNSEL OF RECORD:

For Appellants:

Eileen E. Shore argued for PSC, Helena, Montana

For Respondents:

John Doubek argued; (Montana Irrigators) Small,
Hatch, Doubek & Pyfer, Helena, Montana
C. W. Leaphart, Jr. argued; Leaphart Law Firm
(Champion International and Conoco, Inc.), Helena,
Montana
Lindwood A. Morrell argued, New York, New York
(Champion International and Conoco, Inc.)
James A. Robischon; (Anaconda Minerals), Butte, Montana
Dennis Lopach, Helena, Montana

Submitted:   March 5, 1984

Decided:   May 1, 1984

Filed:   MAY 1 1984

Ethel M. Harrison

Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

The Department of Public Service Regulation, the Montana Public Service Commission (PSC) and the individual commissioners appeal an order of the Jefferson County District Court which "reversed" a decision of the Commission. The Commission ruled on the question of type of rate structure to be used by Montana Power Company in collecting the company's authorized revenue increase. Commercial users adversely affected by the Commission's ruling, Montana Irrigators, Inc., filed for judicial review in Jefferson County District Court. Champion International, Conoco, Inc., and Anaconda Minerals Co., appeared as intervenors (plaintiffs) and users of electric service and energy supplied by Montana Power Company. We reverse the District Court and reinstate the PSC order.

Montana Power Company filed a rate increase request with the Public Service Commission. PSC divided the request into two phases: Phase I is the revenue requirements question; Phase II is the rate structure, or how the increased rates were to be allocated to residential, business, irrigation and industrial users. Phase I is not an issue in this case.

Diverse interests were represented in the proceedings. The Montana Consumer Counsel and the Human Resources Counsel advocated a marginal cost approach to distribution of the rate increases. Under this theory, cost of service is arrived at by examining costs incurred to provide energy in addition to what is now being produced. Theoretically, rates would proportionally reflect the per unit cost of the additional service, and would therefore establish class and customer "price signals" such that the consumer faces the economic consequences of consumption.

Industrial users advocated use of an <u>imbedded</u> <u>cost</u> <u>approach</u>. This method establishes rates by referring to historical accounting costs invested by the utility. This method results in a "clean" allocation of the revenue pie. But historical costs may be misleading to the extent they reflect costs in a cheap energy era.

The Montana Power Company presented both methods of determining cost of service but advocated the imbedded cost approach.

The Montana Irrigators also advocated the imbedded cost approach. Their major points of contention, however, were directed at misrepresentation of the cost of service burden of the irrigators due to (1) misinterpretation and misapplication of load survey data, (2) lack of reliable and informative load data, (3) unsupported and arbitrary cost allocation between irrigation season and off season, (4) failure to consider contribution to system peak. The irrigators contend that this misrepresentation of the cost of service attributable to their class results in arbitrary and improper rates. The irrigators also challenge the failure of the commission to consider transcribed testimony of some of their witnesses.

The Commission adopted a marginal cost method rate structure.

The trial court appears to have misunderstood the nature of the petition for judicial review filed by the irrigators. While the irrigators sought to vacate or modify the Commission's orders for the misrepresentation explained above as well as procedural shortcomings, the district court's decision was directed only at the adoption of the marginal cost methodology in favor of the imbedded cost approach. The

3

judgment of the court was explained by an accompanying memorandum.

"It is evident the marginal cost pricing approach is new. It is also evident it would have had great future impact on the MPC and its customers. And it is evident that marginal cost is a change of real proportions from the traditional 'embedded cost' approach used in this State.

"This Judge is convinced of the wisdom and clear necessity for a clear articulation of the PSC in its findings and conclusions and finally its orders. This requirement, to this Court, means a statement or statements in easily understood language of 'why'!

\*   \*   \*

"After reading the PSC's Findings again and checking against the record, the Court is convinced '. . . any such reason would have to be found in paragraphs 18, 19 or 20 of Order 4714d, and no valid reason is stated there. (That irrigation rates have been too low -- by either marginal or embedded cost standards -- is no basis for choosing marginal costs)'

\*   \*   \*

"The record before the Court is not single in its thrust."

The memorandum went on to analyze the testimony of various expert witnesses for each side of the marginal cost - imbedded cost controversy.

The court "reversed" the Commission's order as follows:

"Order 4714d does not satisfy the general requirements of a reasoned decision as required by law that an agency must clearly articulate its findings and give supporting reasons to allow a reviewing Court to understand what its decision means and therefore understand it and then rule.

"The entire record below does not contain substantial credible evidence to support the PSC's Orders 4714d and 4714e.

"Montana Public Service Commission's Orders 4714d and 4714e are reversed."

PSC now appeals the district court's order claiming:

1. The court substituted its judgment as to the weight to be accorded to the testimony of the experts regarding the marginal cost and imbedded cost approaches.

4

2. The district court should have "remanded" rather than "reversed" if it felt the commission's decision was not clearly articulated.

The following issues are raised on appeal:

1. Is this appeal moot by virtue of a new rate structure proceeding involving all parties to this controversy?

2. Is there substantial credible evidence to support the Commission's decision to use a marginal cost theory for determining rate structures?

3. Is there sufficient credible evidence to support the adopted rate structure?

4. Did the Commission adequately support its decision with reasoned opinion, authority and findings?

Respondent Montana Irrigators, Inc. (Irrigators) contend the controversy surrounding the PSC decision is rendered moot by a subsequent rate structure case now in progress before the Commission involving the same issues and parties. We disagree. The PSC order establishes cost allocations for the interim until a new rate structure is established. As long as the Irrigators oppose the first decision, a justiciable controversy exists.

The Public Service Commission contends the district court erroneously substituted its judgment for that of the agency on a question of complex fact and public policy. The PSC argues that the district court failed to properly apply the "substantial evidence" standard. Instead, the court found the PSC decision was inadequately reasoned and thus justified adoption of the court's own reasoning and judgment.

We find that the district court did in fact erroneously substitute its judgment. The district court concluded that evidence relied upon by the agency was misstated, that the

5

agency was wrong when it said there was no evidence that the imbedded cost method was better, and that the agency was wrong to conclude that cost-based price signals cannot be established with imbedded costs. Rate structuring involves highly specialized theories of economics. The weighing and balancing of expert opinion pro and con is properly vested in the administrative agency in its field of expertise. No. Plains Resource Council v. Board of National Resources and Conservation (1979), 181 Mont. 500, 509, 594 P.2d 297, 303.

The district court may reverse the agency decision on the weight of the evidence only if it is "clearly erroneous." Section 2-4-704(2), MCA. This means there are grounds for reversal only if there is no substantial credible evidence of record to support the decision. City of Billings v. Billings Firefighters Local No. 521 (Mont. 1982), 651 P.2d 627, 632, 39 St.Rep. 1844, 1849.

While there is considerable conflicting evidence, we find ample and credible evidence of record supporting the marginal cost theory:

1. Dr. Power testified that marginal costs measure the causally imposed cost of increased consumption. If a price system is to encourage rational economic behavior by consumers, it must accurately inform the consumers of this causally imposed cost. Marginal cost pricing strategies have been widely used historically.

2. MPC witness Bruce Ambrose testified that he believed MPC should use marginal pricing. Pricing signals based on historic costs are misleading.

3. MPC witness Robert Logan recommended rates designed to reflect marginal costs.

All of these witnesses are recognized experts in the field of rate-making theory.

6

The district court took the position that the PSC's adoption of marginal cost pricing "is not 'articulated' and therefore falls within the ambit of the substantial credible evidence rule". This amounts to a position that if the court does not understand the decision there is no evidence to support it. Such a position can not be sustained.

The Irrigators challenge the adopted rate structure as based on faulty data and unfair and arbitrary assumptions. Regardless of what costing theory is adopted, they argue the PSC cannot base a rate structure on inaccurate data. For example, the PSC used load survey data from Utah to interpolate consumption by Montana Irrigators. The adopted structure is based on non-coincident peak data and thereby fails to fairly reflect the burden imposed by Irrigators' contribution to system peak. Also, the adopted structure arbitrarily allocates marginal costs on a 40-60 split between summer season and winter season.

The Irrigators complaints are well taken. However, a new rate structure order should not be reversed merely because it is not perfect, especially where it is a considerable improvement over the old structure. We believe the Commission's order reflects some of the best evidence ever presented in a determination of an appropriate rate structure. The adopted structure should remain intact until such time as better data can be considered by the Commission.

Finally, the Public Service Commission challenges the conclusion of the district court that the rate structure decision was not adequately reasoned and articulated. This Court has recently outlined the basis upon which an agency's findings and conclusions will be judged: "The conclusions here are sufficiently supported by reasoned opinion to render their basis reasonably ascertainable." State ex rel. Mont.

7

<u>Wilderness</u> <u>Assoc.</u> <u>v.</u> <u>Bd.</u> <u>of</u> <u>Nat.</u> <u>Resources</u> <u>and</u> <u>Conservation</u> (Mont. 1982), 648 P.2d 734, 750, 39 St.Rep. 1238, 1256.

It is not necessary for the Commission to thoroughly analyze and evaluate in its order all details of the complex theoretical arguments advanced. It is the function of the testifying experts to sort through the morass of theory and data, and provide expert opinions. As the finder of fact, the Commission must simply accept or reject these opinions for sound reasons.

In this proceeding, two economic theories were advocated. In its order, the Commission summarized the testimony of both embedded cost proponents and marginal cost proponents and then clearly identified the reasons for adopting the latter method:

> "The proper prescription is marginal costing where the consumer faces the economic cost consequences of consumption. All parties agree that cost causation should be the basis in ratemaking. The Commission fails to see any analytical correlation between the economic costs incurred to provide service and the embedded accounting costs -- either on an individual customer basis or on a collective class basis.
>
> "[A]bsent a marginal cost study there is simply no cost basis for establishing class and customer price signals." Order No. 4714d, Finding Nos. 20, 22.

The <u>basis</u> for this choice is readily ascertainable from the findings, reasonings and conclusions in the PSC order. While the district court may find these reasons unsound, that is a disagreement with the opinion of the experts the agency chose to follow and is beyond the court's scope of review.

The order of the District Court is reversed and PSC rate structure Orders Nos. 4714d and 4714e are reinstated.

Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

9

Mr. Justice Fred J. Weber dissents as follows:

I respectfully dissent from the majority opinion which concludes that the PSC rate structure order should be reinstated. The terminology in this case is difficult to understand, and I have been tempted to affirm the PSC because it has the duty to analyze these complex theories and its conclusions are entitled to respectful consideration. However, as I again review the findings and conclusions of the District Court, I conclude that the PSC orders are significantly deficient.

I support the legal analysis of the majority opinion with regard to the substantial credible evidence rule and approval of an agency's findings and conclusions where sufficiently supported by a reasoned opinion. It is in the application of these rules that I dissent.

In addition, as pointed out by the District Court, because this is also a rule-making case, section 2-4-305(1), MCA (Montana Administrative Procedure Act) also applies. That subsection states in part:

> "Upon adoption of a rule, an agency shall issue a concise statement of the principal reasons for and against its adoption, incorporating therein its reasons for overruling the considerations urged against its adoption." (emphasis added.)

I conclude there is a failure to meet the requirement of that statute as well as the reasoned opinion requirement of section 2-4-623(3), MCA. State, Etc. v. Board of Natural Resources (Mont. 1982), 648 P.2d 734, 750, 39 St.Rep. 1238, 1256.

Finding of fact No. 6 of the District Court described the major change in adopting marginal cost pricing:

> "All parties further admit the adoption of marginal cost pricing represented a major departure from PSC's traditional utility rate structure, which in the long past has been based upon 'embedded' or average costs; except this is . . . a substantial

10

change in the existing PSC policy governing the allocation of MPC's revenue requirements and the price to be charged for a unit of electric utility service.

"The administrative case below was a lengthy and complicated one. It has scores of experts with their testimony, with direct, before and rebuttal. It is of great volume; many ranchers testified; the case was hotly contested and as it turned out, was a case in which major structure changes were made in the rate charges."

The District Court concluded that there had been a failure to address the principle reasons for and against the adoption as required under section 2-4-305(1), MCA and under the statute. As a result the District Court stated:

"Order 4714d does not satisfy the general requirements of a reasoned decision as required by law that an agency must clearly articulate its findings and give supporting reasons to allow a reviewing Court to understand what its decision means and therefore understand it and then rule."

The majority opinion concludes there has been an adequate summary of the testimony and reasons and cites the following quoted portion of the PSC order for that conclusion:

"The proper prescription is marginal costing where the consumer faces the economic cost consequences of consumption. All parties agree that cost causation should be the basis in ratemaking. The Commission fails to see any analytical correlation between the economic costs incurred to provide service and the embedded accounting costs -- either on an individual customer bases or on a collective class basis.

"[A]bsent a marginal cost study there is simply no cost basis for establishing class and customer price signals." Order No. 4714d, Finding Nos. 20, 22.

As I reread that explanation, it tells me very little. It fails to give any explanation as to why the traditional rate structure which was acceptable for so many years is no longer adequate. It fails to address the significant arguments against as well as in support of the marginal cost theory. In substance, it fails to meet the requirements of

11

section 2-4-305(1), MCA in that none of the principal reasons for and against the adoption and particular reasons for overruling the considerations urged against adoption are addressed in any significant manner. I am left to guess as to the reasons which caused the PSC to rule as it did.

In her brief, the counsel for the PSC stated:

"However, if the language contained in the order contains too much jargon to convey that conclusion to this court, the Commission recognizes that it is obligated to provide an explanation that is sufficiently clear, and stands ready to do so."

I would accept this suggestion on the part of the PSC, reverse the District Court, and return the case to the PSC for the preparation of orders sufficient in terms to constitute a reasoned decision, properly reviewable by this Court. We unhesitatingly reverse the district courts for their failure to set out sufficient reasons to allow our review of their decisions. We should do the same here.

Justice