No. 85-603

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

---

BURLINGTON NORTHERN RAILROAD COMPANY,

Petitioner and Appellant,

-vs-

MONTANA DEPARTMENT OF PUBLIC SERVICE
REGULATION, PUBLIC SERVICE COMMISSION,
THOMAS J. SCHNEIDER, CLYDE T. JARVIS,
JOHN DRISCOLL, HOWARD ELLIS AND DANNY
OBERG,

Respondents and Respondents.

---

APPEAL FROM:  District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Charles Luedke, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Crowley Law Firm; Michael E. Webster argued, Billings,
Montana

For Respondent:

Clay R. Smith argued, Asst. Attorney General, Helena,
Montana

---

Submitted:  May 14, 1986

Decided:  June 5, 1986

Filed:  JUN 5 - 1986

_Ethel M. Harrison_
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

After a hearing and submission of briefs, the Montana Public Service Commission (PSC) dismissed a petition by Burlington Northern Railroad Company (BN) to close its operation at Lodge Grass, Montana. The dismissal was based on the PSC's conclusion that it lacked jurisdiction. Lodge Grass is on the Crow Indian Reservation. BN sought review in the District Court for Yellowstone County, and the court affirmed the PSC's order. We reverse.

The issue is whether the PSC properly determined that it does not have regulatory jurisdiction over the proposed closure of the Lodge Grass Station.

BN's predecessor, Big Horn Southern Railroad Company, was granted a right-of-way through the Crow Indian Reservation by Act of Congress in 1889. The purpose of the right-of-way was "for the construction, operation, and maintenance of [Big Horn's] railroad, telegraph, and telephone lines . . ." Section 3 of the Act provided in part that "the surveys, construction, and operation of such railroad shall be conducted with due regard for the rights of the Indians, and in accordance with such rules and regulations as the Secretary of the Interior may make to carry out this provision. . ." The Act was amended in 1893 to expand the time frame for construction and to modify the legal description of the right-of-way. The Lodge Grass station was constructed on the right-of-way, and BN eventually succeeded to Big Horn's interest under the 1889 and 1893 Acts.

In 1981, BN requested authority from the PSC to discontinue its station at Lodge Grass. The request was made under A.R.M. § 38.4.301. The reasons given for the request were the lack of business at Lodge Grass and the availability of a

2

station at Hardin to take over the Lodge Grass station's remaining duties. On July 27, 1982, the PSC held a public hearing on the proposed closure. There was testimony that there had been no shipments into or out of the Lodge Grass station for over two years. There was also testimony about proposed Tribal business ventures which would use the station. At the end of the hearing, the PSC requested briefs on whether it had jurisdiction to decide upon BN's application.

The Crow Tribe has since enacted a common carrier ordinance. The ordinance was not relied upon by either the PSC or the District Court in their decisions.

In concluding that it did not have jurisdiction over BN's petition, the PSC found that: (1) Burlington Northern had succeeded to Big Horn's interest under the 1889 and 1893 Acts; (2) the 1889 Act "provided generally that the surveying, construction, and operation of the right-of-way was to be subject to the approval and/or regulations of the Secretary of Interior;" and (3) "[t]he impact of the proposed abandonment will fall predominantly, if not exclusively, on the Lodge Grass agency and Tribal members dependent upon rail service to that station." Relying on White Mountain Apache Tribe v. Bracker (1980), 448 U.S. 136, 100 S.Ct. 2578, 65 L.Ed.2d 665, the PSC concluded that the propriety of its asserting jurisdiction over BN's application involved balancing State and federal/tribal interests and that federal/tribal interests predominated under these circumstances. The District Court affirmed this decision on cross-motions for summary judgment.

The White Mountain Apache test applies where "a State asserts authority over the conduct of non-Indians engaging in activity on the reservation." White Mountain Apache, 448

3

U.S. at 144. BN argues that its interest in the railroad right-of-way is in the nature of a fee interest, and that the balancing test set out in White Mountain Apache does not apply. BN's argument is not persuasive. The PSC cites United States v. Soldana (1918), 246 U.S. 530, as authority that the title of the Crow Tribe to the land within the Big Horn (now BN) right-of-way was not extinguished when the right-of-way was created. We conclude that the Crow Tribe retains an interest in the land underlying the right-of-way and therefore, the White Mountain Apache balancing test applies.

White Mountain Apache concerned the State of Arizona's efforts to apply its motor carrier license and use fuel taxes to a non-Indian enterprise operating solely on the Fort Apache Reservation. The Court held that the taxes were pre-empted by federal law, but distinguished the process it used to reach this conclusion from standard preemption analysis. The Court held that:

> [w]hen on-reservation conduct involving only Indians is at issue, state law is generally inapplicable, for the State's regulatory interest is likely to be minimal and the federal interest in encouraging tribal self-government is at its strongest (citations omitted). More difficult questions arise where, as here, a State asserts authority over the conduct of non-Indians engaging in activity on the reservation. In such cases we have examined the language of the relevant federal treaties and statutes in terms of both the broad policies that underlie them and the notions of sovereignty that have developed from historical traditions of tribal independence. This inquiry is not dependent on mechanical or absolute conceptions of state or tribal sovereignty, but has called for a particularized inquiry into the nature of the state, federal, and tribal interests at stake, an inquiry designed to determine whether, in the specific context, the exercise of state authority would violate federal law (citations omitted).

4

White Mountain Apache, 448 U.S. at 144-45.

In White Mountain Apache a crucial factor in the balance of State interests against federal/tribal interests was the comprehensive scheme of federal regulation of the harvesting of Indian timber, in the form of Acts of Congress, detailed Interior Department regulations, and day-to-day supervision by the Bureau of Indian Affairs. White Mountain Apache, 448 U.S. at 145-48. Also weighed in the Court's consideration were the economic burden on the Tribe of the asserted taxes, and the "significant geographical component of tribal sovereignty." White Mountain Apache, 448 U.S. at 151. On the other side of the balance was the State's general interest in raising revenue. White Mountain Apache, 448 U.S. at 150. The Court held that the federal/tribal interests outweighed the State's interest, and the State was denied jurisdiction.

In the present case, in marked contrast, there is an absence of federal regulation of railroad rights-of-way over Indian land, although there is clearly authority for it. The absence of regulatory action by both the federal government and the Crow Tribe during a period of close to 100 years is highly significant. It could even be called acquiescence, in view of Montana's 70 years of regulation of railroads, including railroads running through this reservation. Montana has enacted a comprehensive regulatory scheme governing all railroads doing business in this state, at Title 69, Chapter 14, MCA.

Second, and also in contrast to White Mountain Apache, the state jurisdiction sought here is regulatory jurisdiction for the public good, not authority to tax. The PSC has the same statutory obligation to consider the interests of the

5

Indian people of Montana and of the Crow Reservation as of the non-Indian or off-reservation people.

We accept the finding that the impact of closure of the Lodge Grass station would primarily affect tribal members, because that finding is not clearly erroneous. See City of Billings v. Billings Firefighters (Mont. 1982), 651 P.2d 627, 632, 39 St.Rep. 1844, 1849. However, because of the testimony that the station was not used for over 2 years preceding BN's petition and was used very infrequently before that time, we do not weigh this factor heavily.

Under White Mountain Apache we have weighed the interest of the State, which is represented by more than 70 years of comprehensive regulation of all railroads in Montana, both on-reservation and off-reservation, as compared to the federal/tribal interest, which is represented by an absence of federal statutory or administrative regulation and an absence of any action by the Crow Tribe in the nature of an ordinance or other attempt to regulate the railroads on the reservation. We emphasize that we are not ruling upon the Crow Tribe's common carrier ordinance, which is not properly before us. We conclude that the State's interest significantly outweighs the federal/tribal interest. We therefore reverse the decision of the PSC and the District Court. We order the PSC to assume jurisdiction and to proceed to rule upon BN's petition to close the Lodge Grass station.

_____
Justice

We Concur:

6

_____
Chief Justice

_____

_____

_____

_____
Justices

Mr. Justice John C. Sheehy, concurring specially and dissenting:

I agree of course that some governmental entity must have jurisdiction of subject matter here, the proposed closure of the railroad station at Lodge Grass, and that at the time of the proceedings here, the PSC had that jurisdiction.

In the meantime though, the Crow tribe has adopted a regulatory ordinance applying to railroads which is the subject of an action in the federal district court to determine its validity. Immediately upon remand by us to the PSC for further action relating to the closure, the question will undoubtedly arise whether, in view of the adoption of the tribal ordinance, the PSC has any further jurisdiction, or whether it properly belongs in the Crow tribe. Undoubtedly the federal district court will be called upon to decide that issue. Anticipating this, I would stay the effect of our decision here until a final determination is made in the federal district court as to whether the Crow tribe now has exclusive jurisdiction of the proposed closure under the tribal ordinance. In that way, we would avoid a potential conflict between the federal and state courts in this matter.

John C. Sheehy
_____
Justice