No. 87-226

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

DAVID VERNON KAUFFMAN, M.D.,

Plaintiff and Appellant,

-vs-

DEPARTMENT OF COMMERCE, BOARD OF
MEDICAL EXAMINERS, A political
subdivision of the State of Montana,

Defendant and Respondent.

---

APPEAL FROM: District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Michael Keedy, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Leaphart Law Firm; C. W. Leaphart, Jr. argued, Helena,
Montana

For Respondent:

Harrison, Loendorf & Poston; John P. Poston argued,
Helena, Montana

---

Submitted: November 3, 1987

Decided: November 20, 1987

Filed: NOV 20 1987

_____
Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Petitioner and appellant David Vernon Kauffman, M.D., appeals an order of the Eleventh Judicial District, Flathead County, affirming the decision of the State Board of Medical Examiners (Board) to revoke Kauffman's medical license. We affirm.

Two issues are presented for our review:

1. Did the Board abuse its discretion when it revoked Kauffman's medical license?

2. Was appellant Kauffman prejudiced when the Board offered Exhibit 8 into evidence?

Appellant, Dr. David Kauffman, is a graduate of Eastern Mennonite College, Harrisburg, Virginia, and Hahnemann Medical College, San Francisco, California. In 1957 Kauffman interned at Sacred Heart Hospital in Spokane, Washington. Since 1959, he has practiced medicine in Whitefish, Montana.

Following the death of two infant patients in 1984, the Board restricted Dr. Kauffman's license by barring him from treating obstetrical patients and providing neo-natal care to infants. The Board alleged three instances of unprofessional conduct. Following continuance, Dr. Kauffman responded by denying any unprofessional conduct.

On October 25, 1985, the Board issued an amended notice of hearing based upon the same allegations. The Board reconfirmed that Dr. Kauffman was restricted from practicing obstetrical and neo-natal care. The amended notice also contained the following allegations:

IV. Dr. Kauffman aided and abetted another person in the unlicensed practice of medicine;

V. Dr. Kauffman falsely, fraudulently and deceptively submitted bills to the Montana Social and Rehabilitative Services (SRS);

2

VI. Dr. Kauffman continued to provide prenatal care to a patient following the original restriction order; and

VII. Dr. Kauffman provided care for a new obstetrics patient following the original restriction order.

Contested hearings were held March 17, 18, 19 and March 30 and April 1, 1986. On June 23, 1986, another hearing was held before the full Board of Medical Examiners. The Board issued its final order on June 27, 1986, revoking Dr. Kauffman's license to practice medicine. On April 1, 1987, the Honorable Michael H. Keedy affirmed the Board's order.

In Count I, the Board alleged that Dr. Kauffman committed negligent medical practice when caring for Susan Buck and her unborn baby. The Board determined that:

(1) Dr. Kauffman's birthing room was not adequately equipped;

(2) obstetrical patients were not fully informed of the process of office birthing; and

(3) Dr. Kauffman did not have a protocol for complications.

The Board also determined that Dr. Kauffman committed negligence and gross malpractice when the unborn baby's umbilical cord became prolapsed and Dr. Kauffman failed to:

(1) leave Susan Buck in the care of qualified and competent personnel;

(2) administer oxygen;

(3) place Susan Buck in the knee-chest position;

(4) transport Susan Buck to the North Valley Hospital in Whitefish (instead of Kalispell Regional Hospital),

(5) accompany Susan Buck to the hospital and push on the head of the baby and monitor the baby.

In Count II, the Board alleged that Dr. Kauffman committed negligent medical practice and gross medical malpractice when caring for Kimberly Koppen and her unborn baby.

3

The Board found that Dr. Kauffman committed negligence and gross malpractice when Dr. Kauffman failed to:

(1)   test Kimberly for gestational diabetes;

(2)   perform non-stress testing after Kimberly Koppen reached full term;

(3)   recognize Kimberly was a complicated patient with a family history of diabetes and was post-term;

(4)   adequately monitor the unborn baby;

(5)   deliver the infant once fetal distress was obvious.

In Count III, the Board alleged that Dr. Kauffman misled some of his obstetrical patients when he informed them that he would have hospital privileges before the birth of their children.  Dr. Kauffman did not refute the Board's allegation.

In Count IV, the Board found Dr. Kauffman not guilty of aiding and abetting an unlicensed physician in the practice of medicine.  In Count V, the Board found Dr. Kauffman not guilty of false, fraudulent or deceptive billing practices.

In Counts VI and VII the Board found Dr. Kauffman guilty of violating the Board's order that Dr. Kauffman discontinue to provide obstetrical care.  Dr. Kauffman did not dispute the Board's finding.


Issue 1

Did the Board abuse its discretion when it revoked Kauffman's medical license?

Our standard when reviewing contested cases under the Montana Administrative Procedures Act (MAPA) is found in § 2-4-704, MCA, which provides in pertinent part:

> (2)   The court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.   The court may affirm the

4

decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decision are:

(a) in violation of constitutional or statutory provisions;

(b) in excess of the statutory authority of the agency;

(c) made upon unlawful procedure;

(d) affected by other error of law;

(e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record;

(f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(g) because findings of fact, upon issues essential to the decision, were not made although requested. [Emphasis added.]

Appellant Kauffman does not challenge any of the Board's findings of fact or conclusions of law. Further, Dr. Kauffman does not challenge the Board's authority to revoke his medical license. Rather, appellant Kauffman contends the Board acted in a punitive, rather than a protective manner when it revoked his license. In re Matter of the Denial of License of Rudolph E. White (Mont. 1986), 712 P.2d 1344, 1346, 43 St.Rep. 151, 154; § 37-3-101, MCA. Appellant argues that a license restriction rather than a license revocation is the proper remedy.

5

The Board made 134 findings of fact which were adopted by the District Court. A review of the Board's findings reveals that Dr. Kauffman practiced medicine in a "half-hearted" manner in nearly all areas of his medical practice. Clearly, the Board's decision is based on reliable, probative and substantial evidence, § 2-4-704(2)(e), MCA.

In the Board's conclusions of law, the serious nature of this proceeding is addressed:

> Underlying this proceeding is the unspoken problem of terminating this doctor's right to practice his chosen profession, and the havoc that will bring to him and his family. No doubt this is a point which must be seriously considered. However, the upheaval revocation will cause the Kauffmans is a mere inconvenience when compared to the agony caused the two families by the deaths of their infants.

> Dr. Kauffman's care and treatment of S.B. and K.K. are each by themselves enough to invoke revocation of Dr. Kauffman's license to practice medicine. However, the evidence established that the unfortunate deaths of the two infants were no quirks of fate occurring in the practice of an otherwise competent and conscientious physician. Rather, they were all but inevitable events in view of the lax and half-hearted manner in which Dr. Kauffman practiced medicine. Whether this is a result of disinterest or inability is only of secondary interest.

As a court of last resort, we appreciate the gravity of removing appellant's means of livelihood. However, we are bound by § 2-4-704, MCA, to affirm the findings of fact and conclusions of law of the Board and the District Court in absence of an abuse of discretion. Yanzick v. School Dist.

6

No. 23 (1982), 196 Mont. 375, 388, 641 P.2d 431, 439. We hold the District Court did not abuse its discretion when it revoked appellant's license to practice medicine.

Issue 2

Was appellant Kauffman prejudiced when the Board offered Exhibit 8 into evidence?

Appellant contends Exhibit 8, a 1978 letter from the Board to Dr. Kauffman, was introduced at the hearing without proper prehearing exchange. Section 2-4-612, MCA. The hearing examiner initially admitted Exhibit 8 over appellant's objection. In his findings of fact and conclusions of law, the hearing examiner reversed his ruling and rejected Exhibit 8. In doing so, the hearing examiner stated:

> I now reverse that ruling. Exhibit 8 is excluded from the evidence and was not considered by me in preparation of these findings of fact and conclusions of law. In light of the overwhelming evidence it would have made no difference.

In light of the above-mentioned statement, we hold the appellant Kauffman was not prejudiced by introduction of Exhibit 8. The issue at hand is similar to a bench trial, in which the trier of fact routinely reviews proposed exhibits before admitting or rejecting them. Appellant's argument is unpersuasive.

We suggest that Dr. Kauffman continue his medical education and training if he desires to move the Board of Medical Examiners to reinstate his medical license.

Affirmed.

Chief Justice

7

We concur:

_John Conway Harrison_

_[signature]_

_L.C. Gulbrandson_

_William E. Hunt_

_R.C. McDonough_
Justices

8

Mr. Justice John C. Sheehy dissenting:


Dr. Kauffman has limited his appeal in this case to the breadth of the order revoking his medical license. He contends that out of his broad general practice, as a general practitioner, the issues on which the Board of Medical Examiners found against him are limited to the narrow field of his practicing obstetrics-gynecology. The findings of the Board substantiate his argument. Apart from the problems that developed from his practice of obstetrics, no complaint exists against him with respect to any other portion of his general practice which over nearly 30 years, has been extensively broad.

On review from an agency decision under the Montana Administrative Procedure Act (Section 2-4-704, MCA), "the standard of review to be applied to findings of fact by a reviewing court is one of "clearly erroneous"; conclusions of law are subject to an "abuse of discretion review." Billings v. Billings Fire Fighters Local No. 521 (1982), 200 Mont. 421, 651 P.2d 627. It appears to me to be an abuse of discretion to revoke completely Dr. Kauffman's license to practice medicine, when, in the light of the objections made, a fair result could be obtained by simply restricting him from the practice of obstetrics-gynecology. The Board has power to do so under § 37-3-323(4)(e), MCA. When the Board disciplines a practitioner, it may "take any other action in relation to disciplining him as the Board in its discretion considers proper."

There is power under our statutes for the Board to enforce a partial restrictive order or suspension of the right to practice. A violation of the Board's order restricting such practice is punishable as a misdemeanor

9

under § 37-3-325, MCA. That course was not followed here by the Board, although if the Board's allegations were true, a procedure under § 37-3-325, MCA, would be more effective in enforcing the Board's suspension order. The ensuing action of the Board in completely revoking his license to practice, rather than a partial suspension relating to the field in which it charged incompetence has a punitive smack. Punishment is the business of courts and not of administrative agencies. In Matter of White (Mont. 1986), 712 P.2d 1344, 43 St.Rep. 151, we found the denial of a nursing license to be hypertechnical and an abuse of discretion by the agency. In White we also pointed that the intention of the legislature should be served by licensing agencies in the discharge of their duties. Here, the privilege of the practice of medicine should be regulated "to the end that the public shall be properly protected against unprofessional, improper, unauthorized, and unqualified practice of medicine" (§ 37-3-101, MCA), and the Board should maintain such reasonable supervision to ensure that licensees, "maintain standards of conduct and exercise [their] privileges . . . in the greatest public interest." (§ 37-3-202, MCA). The greatest public interest in this case would be served by limiting the restriction of Dr. Kauffman's license to obstetrics and gynecological cases, and leave him free to practice in all other fields in which he is qualified. The people in northwest Montana would be better served by such a course. The effect of the Board's decision is to deny to a qualified practitioner the right to practice within all fields of his expertise in Montana. Under White, this is an abuse of discretion.

An example of going outside the record to justify a result is the resort by the agency and now this Court to a comparison of the agony felt by the bereaved families of the

10

infants to the "inconvenience" of Kaufman's loss of license. Our natural sympathies are played upon and the punishing effect of the order is masked as just retribution.

_____
Justice