NO. 91-197

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

STATE COMPENSATION MUTUAL INSURANCE FUND,

       Petitioner and Respondent,

   -vs-

LEE ROST LOGGING,

       Employer, Defendant and Appellant.

APPEAL FROM:   In The Workers' Compensation Court
                The Honorable Timothy W. Reardon, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

           James C. Bartlett, Hash, O'Brien and Bartlett,
           Kalispell, Montana

       For Respondent:

           Richard E. Bach, State Compensation Mutual
           Insurance Fund, Helena, Montana

Submitted on Briefs: November 8, 1991

Decided: January 28, 1992

Filed:

FILED

JAN 28 1992

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

_____
Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Appellant Lee Rost Logging (Rost) is a logging business in Bigfork. A hearing officer for the Department of Labor and Industry determined that Rost did not have to pay workers' compensation insurance premiums on payments made to employees reimbursing them for the use of their pickup trucks. The hearing officer also determined that Rost had made excessive payroll deductions for payments to employees which reimbursed them for the use of their chain saws. On appeal, the Workers' Compensation Court reversed the hearing officer on the issue of pickup rentals and affirmed on the issue of saw rentals. Rost appeals from the decision of the Workers' Compensation Court. We reverse the Workers' Compensation Court on the issue of pickup rentals, and affirm on the issue of saw rentals.

Rost raises the following issues:

**1.** Did the Workers' Compensation Court err in reversing the hearing officer's decision on the issue of pickup rentals?

2. Should the hearing officer's decision regarding pickup rentals be affirmed on the basis of **res** *judicata* and collateral estoppel?

**3.** Did the Workers' Compensation Court err in affirming the hearing officer's decision on the issue of saw rentals?

Appellant Lee Rost runs a small logging business out of his home in Bigfork. He has been in the logging business for more than **20** years. During **1984** and **1985,** Rost had several employees working for him, including sawyers, skidders, and equipment operators.

2

Rost's logging operations were often in remote backwoods areas, requiring the use of four wheel drive vehicles to access the logging sites. Rost needed to transport equipment, parts, supplies, and fuel for machinery to the remote job sites, along with his workers. He had found that he suffered a considerable expense if he supplied the necessary vehicles to his employees, due to the short useful life of vehicles under such adverse driving conditions. Rost found it less expensive to reimburse his employees for using their own vehicles for travel to and from the job sites.

Like other employers in the logging industry, Rost also compensated his employees when they furnished their own chain saws. Rost paid his employees a base pay of $60 per day, plus amounts for pickup rentals and saw rentals in the range of $20 to $60 per day in each category.

Rost carried workers' compensation insurance with respondent State Compensation Mutual Insurance Fund (State Fund). The premium for this insurance was based in part on the employer's payroll. The employer was required to report wages, commissions, piece work payments, and other payments in money or in kind. The employer was not required to report travel allowances made to reimburse employees for their expenses. The payroll report instructions also provided that the employer was to report only 75 percent of the total remuneration paid to an employee furnishing his own chain saw.

In September 1985, the Department of Labor and Industry informed Rost that it would be auditing his unemployment insurance and workers' compensation insurance accounts for periods during 1984 and 1985. The audit was performed in early 1986. The auditor reviewed Rost's payroll records, and the amounts listed as wages, pickup rentals, and saw rentals. The auditor felt that Rost had insufficient documentation that the payments for pickup rentals were related to the employees' actual expenses. The auditor also felt that Rost had excluded from his payroll excessive amounts of saw rental payments. The auditor concluded that Rost owed $30,616 in premiums for workers' compensation insurance.

In June 1986, Rost requested an administrative review of the audit. Rost attempted to supply documentation for the pickup rental amounts by calculating the mileage driven by different employees and multiplying the mileage by $0.21 per mile, the reimbursement allowed at that time by the Unemployment and Workers' Compensation Divisions. However, because these records were prepared after the audit, the reviewing administrator was unwilling to reduce the assessed premium.

Rost then sought a hearing before the Department of Labor and Industry. This hearing was delayed, and then postponed several times at Rost's request. At the same time, Rost was also appealing from the additional assessment claimed by the Unemployment Insurance Division, based upon the same payroll audit. Rost requested the two Divisions to coordinate their appeal procedures.

On September 29, **1987,** the hearing officer in the unemployment insurance case ruled that Rost was not allowed to deduct payments for pickup rentals from reportable wages. Rost appealed this decision to the Board of Labor Appeals. The Board of Labor Appeals reversed and determined that the pickup rentals represented a reasonable reimbursement for the mileage driven by Rost's employees. The Board of Labor Appeals further determined that Rost had relied in good faith on a **1980** decision of the Eleventh Judicial District Court, Flathead County, which had ruled on a similar issue in favor of an employer and against a workers' compensation insurer. The Board of Labor Appeals concluded that Rost's payments for pickup rentals were not "wages" subject to unemployment insurance premiums.

Rost's contested case in the workers' compensation insurance matter was still pending. The hearing was finally held on July 17, **1990.** The hearing officer found that the vehicle payments to Rost's employees were based upon Rost's personal review of the routes to the logging sites, including the actual mileage and quality of the roads. The hearing officer also found that the reimbursed travel was for the benefit of the employer because the workers transported tools, spare parts to repair the equipment, fuel for various machines, and other supplies. The hearing officer determined that these travel expenses generally were within the guideline of $0.21 per mile, and constituted a reasonable reimbursement for employment-related expenses. He found no evidence of cheating or misrepresentation. The hearing officer

5

noted that Rost had won a favorable decision in his appeal of the unemployment insurance matter, and agreed with the Board of Labor Appeals that Rost had relied in good faith on the earlier decision of the Eleventh Judicial District Court. The hearing officer concluded that Rost had provided sufficient documentation of these travel expenses, and that the pickup rental payments were properly excluded from gross wages in determining the workers' compensation premiums.

The hearing officer also concluded that Rost was entitled to deduct 25 percent of gross payroll for sawyers as a business expense where the employees furnished their own chain saws. Although the Workers' Compensation Court had ruled in June 1989 that an injured sawyer was entitled to workers' compensation benefits based on his gross earnings, without the 25 percent deduction for saw rentals, **see** *Guckenberg* ***v. Bill Free*** *Logging, Inc.* (Work. Comp. Ct. 1989), No. 8808-4883, the hearing officer noted that in 1984 and 1985 the State Fund had allowed the 25 percent deduction to other employers. However, the hearing officer found that Rost had exceeded the 25 percent allowable deduction for saw rentals in certain instances and that Rost should be assessed premiums on that excess.

The hearing officer accordingly reversed the auditor's findings on the issue of pickup rentals, concluding that no additional premiums were owed. On the issue of saw rentals, the hearing officer ordered Rost to pay additional premiums because of excessive saw rental deductions.

6

Rost and the State Fund both appealed the hearing officer's decision to the Workers' Compensation Court. The Workers' Compensation Court disagreed with the hearing officer on the issue of travel expenses. The court did not feel that Rost had adequately demonstrated that the pickup rental payments were related to actual expenses. The court found that the hearing officer's findings on this issue were not supported by substantial evidence, and reversed. The Workers' Compensation Court agreed with the hearing officer on the saw rentals issue. The court affirmed the hearing officer's determination that 25 percent of the gross payroll for sawyers should be deducted from wages and considered a business expense.

Lee Rost Logging appeals from the decision of the workers' Compensation Court.

I

Did the Workers' Compensation Court err in reversing the hearing officer's decision on the issue of pickup rentals?

Rost contends that the Workers' Compensation Court erred in reversing the hearing officer's decision on the issue of pickup rentals. We agree.

The hearing officer determined that pickup rental payments constituted a reasonable reimbursement for employment-related expenses. The Workers' Compensation Court ruled that this finding was not supported by substantial evidence, and reversed on this basis. *See* § 2-4-704(2)(a)(v), MCA, which provides that a reviewing court may reverse an agency's decision if it is "clearly erroneous

in view of the reliable, probative, and substantial evidence on the whole record."

This Court recently explained the application of the "clearly erroneous" test in the context of reviewing the findings of a trial court sitting without a jury:

> We adopt the following three-part test to determine if a finding is clearly erroneous. First, the Court will review the record to see if the findings are supported by substantial evidence. Second, if the findings are supported by substantial evidence, we will determine if the trial court has misapprehended the effect of evidence. *Western Cottonoil Co. v. Hodges* (C.A. 5th **1954**), **218** F.2d **158**; *Narragansett Improvement Company v. United States* ([1st Cir.] **1961**), **290** F.2d **577**. Third, if substantial evidence exists and the effect of the evidence has not been misapprehended, the Court may still find that "[A] finding is 'clearly erroneous' when, although there is evidence to support it, a review of the record leaves the court with the definite and firm conviction that a mistake has been committed." *U[nited] S[tates] v. U.S. Gypsum Co.* **(1948)**, **68** S.Ct. **525**, **333** U.S. **364**, **92** L.Ed. **746**.

*Interstate Production Credit Ass'n. v. DeSaye* (Mont. **1991**), **48** St.Rep. **986, 987.** To the extent that our discussion of the standard for reviewing agencies' findings of fact in *City of Billings v. Billings Firefighters* **(1982),** **200** Mont. **421, 651** P.2d **627,** is inconsistent with the standard set forth above, that case is overruled. Applying this test to the hearing officer's findings on the issue of pickup rental payments, we conclude that the findings were not clearly erroneous.

Rost and several of his employees testified before the hearing officer on July 17, **1990.** The employees testified that they had to drive many miles, often more than 100 miles per day, over rough logging roads to reach the job sites. In addition to expenditures for gasoline and normal highway wear and tear, the workers

8

testified that they had extra expenses for servicing their vehicles and replacing parts worn out from traveling on bumpy roads in dusty, muddy, and snowy conditions. Rost's employees testified that they carried extra saws, tools, equipment, spare parts, and fuel to the job sites for their employer. The heavy equipment operators, in particular, brought extra fuel, as much as 100 gallons of gasoline, and everything they would need to keep Rost's equipment running.

Rost testified that it was to his benefit to pay his workers for the use of their vehicles because it would have cost him more to furnish his own trucks. In the past, he had purchased his own vehicles for the logging operation, and found it was too expensive. Rost testified that when he bid a job he considered the costs of getting materials to and from the job site, the quality and condition of the roads, and mileage. He drove all of the roads and considered what it would cost his employees to travel to the job sites. He paid certain employees more if they had to haul more materials to the job. Rost stated that he included more in his calculations than just the mileage traveled, although mileage was one of the factors considered.

Rost's employees testified that the money they received for the use of their pickup trucks was about equal to what it cost them to provide the vehicles.

Based on this and other evidence, the hearing officer made his findings of fact. The hearing officer noted that the pickup rental payments were based upon Rost's personal review of the job sites

and his experience in determining vehicle costs. The hearing officer found that these travel expenses were incurred for the employer's benefit. The hearing officer found that the travel expenses generally were within the $0.21 per mile guideline set by the state, and were a reasonable approximation of actual expenses. The hearing officer concluded from these facts that Rost had paid reasonable reimbursement to his employees for employment-related expenses, and that these payments were properly excluded from gross wages in determining the workers' compensation insurance premiums.

We conclude, based on the standard of review set forth above, that the hearing officer's factual findings on this issue were not clearly erroneous.

## II

Should the hearing officer's decision regarding pickup rentals be affirmed on the basis of *res judicata* and collateral estoppel?

Because we conclude that the hearing officer's decision regarding pickup rentals was not clearly erroneous, we need not consider the application of *res judicata* or collateral estoppel.

## III

Did the Workers' Compensation Court err in affirming the hearing officer's decision on the issue of saw rentals?

The hearing officer determined that Rost had deducted excessive amounts from gross payroll for saw rentals. Rost contends the Workers' Compensation Court erred in affirming this determination. We disagree.

At the time of the audit, the State Fund allowed employers in the logging industry to deduct from gross payroll 25 percent of the total remuneration paid to employees who furnished their own chain saws. Although this practice was discontinued following the June 1989 decision of the Workers' Compensation Court in *Guckenberg*, the hearing officer determined that Rost was entitled to take the deduction as other employers had in 1984 and 1985. The hearing officer determined, however, that Rost had deducted more than 25 percent of the sawyers' pay.

Rost contends that there was insufficient evidence to support this finding, and complains that it has taken too long for the State Fund to determine exactly how much he owes in underpaid premiums. These contentions are not persuasive.

The evidence before the hearing officer included Rost's payroll reports, the auditor's payroll calculations, and testimony at the hearing and at Rost's deposition. Rost had recorded in one notebook the bimonthly wages and withholdings for each employee, and in a separate notebook the saw and pickup allowances paid to each employee during the same periods. Each employee's wages, pickup rentals, and saw rentals can be added together: 25 percent of this total represents the allowable deduction for saw rentals. It is clear from a review of the payroll records that the saw rental payments, in several instances, exceeded 25 percent of gross pay. The hearing officer noted that Rost had paid some employees more as "saw rental" than as "wages" in certain payroll periods. The hearing officer specifically cited the 1985 records as

11

exemplifying this problem. There was sufficient evidence to support the hearing officer's findings.

Regarding Rost's claim that it has taken too long to determine exactly how much he owes in underpaid premiums, we note that much of the delay in reaching a final determination on this question is due to the challenges Rost has raised to the State Fund's original calculation of the premium owed. We note that Rost, on several occasions, requested a delay in these proceedings. Rost has not been prejudiced by the delay.

Since we conclude that there was sufficient evidence to support the hearing officer's findings as to both the saw rentals and the pickup rentals, we affirm the Workers' Compensation Court on the issue of saw rentals, we reverse the Workers' Compensation Court on the issue of pickup rentals, and we remand this matter to the Workers' Compensation Court for further proceedings consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

12

IN THE SUPREME COURT OF THE STATE OF MONTANA

NO. 91-197

STATE COMPENSATION MUTUAL
INSURANCE FUND,

      Petitioner and Respondent,

    v.

LEE ROST LOGGING,

      Respondent and Appellant.

FILED

APR 2 - 1992

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

O R D E R

     This Court's opinion was delivered on January 28, 1992. On February 3, 1992, the appellant petitioned for rehearing and requested that this Court's opinion be amended by excluding "pickup rentals" from the formula suggested on page 11 of the opinion for calculating saw rental deductions.

     On February 6, 1992, the respondent filed its petition for rehearing, and among other bases for its petition, requested the same modification at page 11 of our opinion. Since that date, the appellant has withdrawn his petition and objected to the respondent's petition.

     After reviewing the opinion of the hearing examiner for the Department of Labor and Industry, which was affirmed by this Court's opinion, and the payroll report instruction sheet provided by the State Fund to the appellant, which was the basis for the hearing examiners opinion, we conclude that there is merit in the respondent's petition.

     The general reporting requirements provide that a travel allowance need not be reported as earnings. They then provide that only 75 percent of "total remuneration" need be reported €or an employee who furnishes his own chain saw. It would be inconsistent

1

to exclude travel allowances from the earnings that need be reported, but then to include those payments in calculation of the chain saw allowance.

For these reasons, this Court's previous opinion of January 28, 1992, is amended as follows:

The words "pickup rentals" are deleted from line 7 of page 11.

Except to the extent provided for in the preceding paragraph, the respondent's petition for rehearing is denied.

The clerk shall mail true and correct copies of this order to all counsel of record and to Timothy W. Reardon, Judge of the Workers' Compensation Court.

DATED this _2nd_ day of April, 1992.

_____
Chief Justice

_____

_____

_____

_____
Justices

2