No. 80-47

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

_____

ED SKILLMAN,

                          Plaintiff and Appellant,

        -vs-

THE DEPARTMENT OF STATE LANDS OF THE
STATE OF MONTANA; THE BOARD OF LAND
COMISSIONERS and JAMES R. FOSTER,

                          Defendants and Respondents.

_____

Appeal from:  The District Court of the First Judicial District,
              In and for the County of Lewis and Clark, The
              Honorable Peter G. Meloy, Judge presiding.

Counsel of Record:

        For Appellant:

        Harrison, Loendorf and Poston, Helena, Montana

        For Respondents:

        David Woodgerd, Department of State Lands, Helena,
        Montana
        H. A. Bollinger, Bozeman, Montana

_____

                          Submitted on Briefs:  June 5, 1980

                                    Decided:  JUL 2 8 1980

Filed:  JUL 2 8 1980

_____
Thomas J. Kearney        Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Respondent Ed Skillman petitioned the District Court for judicial review of a decision by the State Board of Land Commissioners to renew a lease of state land to James R. Foster. The Board of Land Commissioners had renewed the lease after finding that Foster had a preference right. The District Court held the Board of Land Commissioners erred in renewing the lease. The court remanded the case to the Board with directions to cancel the Foster lease and lease the land without a preference right. The Department of State Lands and the State Board of Land Commissioners appeal the decision of the District Court asserting the lease to Foster should be reinstated. Skillman cross-appeals contending the court should have awarded the lease to him rather than ordering the lease reopened for bids.

The facts in this case are not disputed by the parties. Foster held a State of Montana surface lease to 640 acres of grazing land in Park County, Montana. The lease expired on February 28, 1979. On January 2, 1979, Foster applied to renew his lease on the land at a rate of $7.50 per AUM (animal-unit-month). On January 23, 1979, Skillman applied to lease the land at a rate of $18.75 per AUM. Foster was notified of the bid submitted by Skillman and informed that as current lessee he was entitled to exercise a preference right to meet the bid. Foster exercised the preference and met the bid on February 22, 1979. The lease was renewed to him on February 28, 1979.

Foster also requested and was granted a hearing to determine whether the bid was in the best interest of the State of Montana. State Land Commissioner Leo Berry conducted the hearing on the matter on March 27, 1979. Evi-

dence introduced at the hearing showed that Foster had subleased the land to Jim Serrazzen but had not filed a sublease form with the Commissioners. Subsequent to the hearing, Commissioner Berry recommended that a renewal lease be issued to Foster at the rate of $7.50 per AUM. The Board accepted the recommendation and renewed the lease at the $7.50 rate.

On July 2, 1979, the Department of State Lands canceled Foster's lease for failure to file a sublease. On cancellation of the lease, it was explained to Foster that his lease would be renewed if he paid a penalty of 50 percent of the annual rental of the land. Foster paid the penalty, and the lease was reinstated.

The following issue is raised by the Department of State Lands for review:

Did the District Court err in determining Foster should not be granted a preferential right to lease the land in question under the authority of Jerke v. State Department of Lands (1979), ____ Mont. ____, 597 P.2d 49, 36 St.Rep. 389?

Respondent Skillman raises the following issue on cross-appeal:

Did the District Court err in declaring the land in question should be reopened for public bid rather than awarding the lease to Skillman?

The arguments of the State are not persuasive in this case. Although the State is correct in stating that Jerke is limited to its facts, the distinctions made by the State are not fatal to its application here. As Chief Justice Haswell pointed out in Jerke, the crucial point of the case is this:

> "To allow an existing lessee who does not use
> the land to exercise a preference right consti-
> tutes an unconstitutional application of the
> preference right statute, section 81-405(1),
> R.C.M. 1947, now section 77-6-205(1), MCA."
> 597 P.2d at 51, 36 St.Rep. at 392.

The mere fact that the lessee in this case is an individual instead of a grazing district is not sufficiently material to the policy involved to disallow the application of the precedent.

Further, if the case is distinguishable and Jerke should not be controlling as precedent, there is even more justification for applying the rationale of Jerke here. In Jerke, although there was a sublease involved, there is no evidence that there was an illegal sublease, as in the case before us. Here the lessee, Foster, sublet his grazing lease without having the sublease approved by the Department of State Lands as required by his lease with the State. Section 77-6-205(1), MCA, recites in applicable part:

> "(1) A lessee of state land classed as agri-
> cultural, grazing, town lot or city lot who has
> paid all the rentals due from him to the state
> and who has not violated the terms of his lease
> is entitled to have his lease renewed . . ."
> (Emphasis supplied.)

Further, ARM §26.3.108(2) establishes the Department's policy:

> "(2) A surface lessee has a preference right
> to renew his lease provided all rentals have
> been paid and the terms of the previous lease
> have not been violated." (Emphasis supplied.)

A strict reading of these statutes raises a serious question whether Foster even had a right to renew (section 77-6-205, MCA) or a preferential right in the leasing procedure (ARM §26.3.108(2)), when this case was filed in District Court. Assuming his sublease arrangement, although not approved by the Department, was not sufficient to deprive

-4-

him of his preference right, he would clearly be the type of lessee that the policy of Jerke was designed to affect.

In consideration of our reasoning in Jerke, we are compelled to apply the same reasoning to the case before us. In Jerke, we held:

> "Where the preference right does not further the policy of sustained yield, it cannot be given effect. In such a situation, full market value can be obtained only by pure competitive bidding. Here, the Grazing District, the holder of the preference right, does not even use the land; it cannot use good agricultural practices or make improvements thereon. . .

> "To allow the preference right to be exercised in this case would be to install the Grazing District as the trustee of the land. It, rather than the Department of State Lands, would decide who will occupy the land, but it would not be bound by a constitutional or fiduciary duty. Under such a scheme, the concept of sustained yield would have no place." 597 P.2d at 51, 36 St.Rep. at 391.

There appears to be no operative fact on the record here that would justify overruling the trial court's decision to follow Jerke. Every point of law and every policy consideration is as applicable to Foster as it was to the grazing district. Therefore, the underlying rationale that originally decided Jerke is equally dispositive of this case.

On cross-appeal Skillman contends that he should be awarded the lease because he was the highest bidder when bids were originally opened. He interprets the language of Jerke and section 77-6-205(2), MCA, relating to "pure competitive bidding" as meaning bidding once and a subsequent award to the highest bidder.

It would be truly inequitable to follow this interpretation. Foster was under the impression that he would have a valid preference right, and he should not be penalized for

that good faith belief. He should have an equal opportunity to bid on the lease. Indeed, if he is not allowed to participate, then the spirit of the competitive bidding statute would be defeated. In addition, Foster had no reason to suspect that he could not exercise the preference right since Jerke had not been decided by this Court.

The judgment of the District Court is affirmed. The lease is canceled and reopened for bidding by all parties.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices