No. 86-179

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

JOHN STEFFEN,

Plaintiff and Appellant,

-vs-

DEPARTMENT OF STATE LANDS, BOARD OF LAND COMMISSIONERS,
DENNIS HEMMER, COMMISSIONS OF STATE LANDS,

Defendants and Respondents.

APPEAL FROM: District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Henry Loble, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Gough, Shanahan, Johnson and Waterman;
Jock O. Anderson, Helena, Montana

For Respondent:

Lyle Manley, Helena Montana

Submitted: July 10, 1986

Decided: September 9, 1986

Filed: SEP 9 - 1986

_Ethel M. Harrison_

Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Mr. Steffen appeals a decision of the District Court for Lewis and Clark County. The court affirmed the decision of the Department of State Lands (Department) that by subletting grazing land leased from the State, Mr. Steffen had lost his preference right to renew the lease. We reverse.

The issue is whether the denial of Mr. Steffen's preference right was unlawful.

In 1972 Mr. Steffen was issued a 10-year state lease on a 640 acre tract of school trust land in Dawson County. This land had been leased by the Steffen family for use with their adjacent 1440 acres since the 1920's. The land is grazing land, but Mr. Steffen had not owned cattle since the late 1960's. During the years 1972 through 1978, Mr. Steffen subleased this tract of state land to Ronald Svenvold for cattle grazing. All of the subleases except the one for the year 1977 were filed with and approved by the Department. The subleases ran from May or June until September or October of each year.

Under § 77-6-205, MCA, a state lessee who wishes to renew the lease is entitled to a preference over others who wish to lease the land. In 1979 this Court issued an opinion, Jerke v. State Dept. of Lands (1979), 182 Mont. 294, 597 P.2d 49, in which it held that a lessee's preference right to renew a lease is lost when the lessee does not use the land but subleases it for the entire lease period.

Mr. Steffen did not sublease the state land in 1979. In response to his inquiry, he was advised by then-Commissioner of State Lands Leo Berry, Jr. that he could take in cattle on the state land and it would not be considered a sublease so

2

long as he managed both the land and the cattle. In 1980 and 1981, Mr. Steffen entered supplemental lease agreements, taking in livestock belonging to Doug Svenvold, son of Ronald Svenvold. In October 1981, when the term of his lease was nearing its end, Mr. Steffen was advised in a letter from the Department that he was entitled to the preference right to meet the bid of any competing bidder and renew his lease. However, in February 1982 he was advised by the Commissioner of State Lands that the previous letter was incorrect and that because he had subleased the grazing right he had lost his preference to renew the lease. He was required to make a competitive bid for the lease. His was the high bid, and the new lease was issued to him.

Mr. Steffen then requested and was granted a hearing before the Commissioner of State Lands on the matter of the loss of the preference right. The Commissioner determined that the Department was correct in ruling that Mr. Steffen had lost his preference right. He found that the Svenvolds exercised the primary management of the cattle during the terms of the subleases. He concluded that a lessee of state grazing land is buying the forage, which is expressed in AUM's. An AUM is the amount of forage one animal unit (a cow and calf pair) will consume in a month. The Commissioner concluded that when the available AUM's are consumed by a sublessee's cattle, the land will be considered subleased for the entire year. Mr. Steffen's sublessee's cattle used up most of the available AUM's each year. The Commissioner cited this Court's opinions in Jerke and Skillman v. Department of State Lands (1980), 188 Mont. 383, 613 P.2d 1389, in support of his decision.

3

Mr. Steffen appealed to District Court. The District Court affirmed the administrative decision. It stated that the Commissioner's findings of fact are supported by substantial credible evidence, and that the opinion was sound and legally correct and would not be overturned.

In its brief, the Department has correctly stated the standards of review of administrative decisions. We must affirm administrative findings of fact unless they are clearly erroneous; if the record contains support for the agency findings, this Court may not weigh the evidence. City of Billings v. Billings Firefighters (1982), 200 Mont. 421, 430, 651 P.2d 627, 632. The scope of review of agency conclusions of law is greater. An agency conclusion may be reversed if it represents an abuse of discretion. Billings, 651 P.2d at 632.

The Commissioner's findings included these:

10. During the years 1972 through 1981, Mr. Steffen alleged he performed some of the management functions. He made sure that the state was paid for the lease. He controlled access when the land was not being subleased, and at one time advised a seismic exploration company that they must apply to the Department of State Lands prior to entering the state land for exploration purposes. Mr. Steffen had authority as to when the cattle were to be put on and taken off of the land, and as to the number of cattle placed on the state land. This authority was used however, in conjunction or in consultation with the Svenvolds. Mr. Steffen directed, at times, the placement of the Svenvolds' salt blocks, cattle scratchers and calf feeders which were located on the state land. He performed weed control on the land. He provided water, to the state land, through his own improvements. Mr. Steffen at one time disposed of one of the Svenvold's cows which had died on the state land. Mr. Steffen, at times, farmed an adjacent tract, and was therefore, able to monitor the state land. Mr. Steffen, at times, repaired and maintained the fences, and he occasionally returned the Svenvolds' stray cattle to the state land.

11. During the years when Svenvold cattle were on the state land Doug Svenvold kept a watch on the

cattle, both for himself and for his father. There was no difference of opinion between Doug Svenvold and Mr. Steffen as to when the cattle were to be placed on the state land. Apparently the parties jointly decided the 'turn in' dates. The Svenvolds placed their own salt blocks, calf feeders, and back scratchers on the land and refilled the feeders when needed. The Svenvolds also supplied the feed supplements and the fly powder for the cattle. In addition, the Svenvolds, at times, decided where to place the salt, scratchers and feeders in order to ensure uniform grazing. The Svenvolds did some of the fence maintenance and used about $200.00 worth of their own material in so doing. Mr. Steffen rarely, if ever, assisted in placing the cattle on the land or taking them off. The Svenvolds, on occasion, took responsibility for disposing of dead cattle.

12. Both Mr. Steffen and the Svenvolds exercised elements of management of the state land. The Svenvolds exercised the primary management of the cattle while the subleases were in existence. This means that the Svenvolds were exercising the vital elements of managing the leasehold interest while the allowable AUM's were being consumed by the Svenvold cattle.

There is support in the record for the above findings of fact. With the exception of the last sentence in paragraph 12, the District Court's determination that the findings could not be disturbed was correct.

The determination of which party is exercising the vital elements of managing this leasehold interest is a legal conclusion. The last sentence in paragraph 12 should properly appear in the conclusions of law. The Commissioner restated it there:

1. When the state leases grazing land, the lessee is buying the forage, which is expressed in AUM's. When those AUM's are consumed the lease has little, if any, value for the rest of that year. Therefore, when a state lessee subleases the land, and all or nearly all the AUM's are used by the sublessee, it does not matter whether the sublessee's livestock are on the land one month or twelve months for purposes of calculating the duration of the sublease. As a result, the Svenvolds subleased this state tract for at least 7 of the 10 years.

5

2. Mr. Steffen did not exercise the majority of the management of this lease. He allowed the Svenvolds to exercise most of the elements of management. As a result, the arrangement with the Svenvolds did not include a retention of management by Mr. Steffen within the spirit of the Jerke and Skillman cases (cited in the following Opinion), and the Department correctly determined that Mr. Steffen lost his preference right.

As discussed above, the standard of review of agency conclusions of law is whether they represent an abuse of discretion. Before analyzing whether the Commissioner's conclusions represent an abuse of discretion, it is appropriate to review the facts and holdings in Jerke and Skillman.

In Jerke, this Court held that the preference in lease renewal had been unconstitutionally granted to the lessee Grazing District, because the District subleased the land for the entire 10-year term. The Court reasoned that the preference right seeks to include the concept of sustained yield within the policy of obtaining full market value on leases of state land. It induces the state's lessees to follow good agricultural practices and make improvements on the land. The Court stated:

Where the preference right does not further the policy of sustained yield, it cannot be given effect. In such a situation, full market value can be obtained only by pure competitive bidding. Here, the Grazing District, the holder of the preference right, does not even use the land; it cannot use good agricultural practices or make improvements thereon. Likewise, the actual user of the land, who as a member of the Grazing District is prevented from bidding on the lease, is not motivated to further the policy of sustained yield. There is no guarantee the Grazing District will exercise its preference right and moreover, if it does, the actual user is not assured the land will be allocated to him.

To allow the preference right to be exercised in this case would be to install the Grazing District as the trustee of the land. It, rather than the Department of State Lands, would decide who will occupy the land but it would not be bound by a constitutional or fiduciary duty. Under such a

6

scheme, the policy of sustained yield would have no place.

To allow an existing lessee who does not use the land to exercise a preference right constitutes an unconstitutional application of the preference right statute. . .

Jerke, 597 P.2d at 51.

In Skillman, this Court upheld the district court's application of the rule in Jerke to an individual lessee who violated the terms of his lease by subletting without the required approval of the Department. The Department had discovered the violation and cancelled the lease, but the lessee then paid a penalty and the lease was renewed. The matter was taken to District Court by Mr. Skillman, another party who wished to lease the land. The District Court applied Jerke and ordered the land reopened for competitive bidding. This Court held that "[e]very point of law and every policy consideration is as applicable to [this lessee] as it was to the grazing district." Skillman, 613 P.2d at 1391. The judgment of the District Court was affirmed, and the lease was reopened for bidding.

In the present case, it is not true that every point of law and every policy consideration set out in Jerke is applicable. The Department's findings of fact show that Mr. Steffen retained significant responsibility and control over the leased land throughout the sublease periods. Mr. Steffen retained control of whether the property should be grazed by subleasing for only one grazing season at a time. He retained control of what months of the year the property would be grazed. He retained responsibility for weed control, developed and retained responsibility for the water supply, and retained responsibility for fences. He also retained responsibility for controlling public access, retained

7

control over the locations of feeders, scratchers, and salt blocks, monitored the cattle to ensure the allowable AUM's were not exceeded, and retained responsibility for paying the State its annual lease payment. While it appears that the sublessees were primarily responsible for the day-to-day management of the cattle, it is not true in this case that management of the cattle is synonymous with management of the leasehold interest in the land. We conclude that Mr. Steffen retained responsibility for the essential elements of the leasehold interest in the land. There has been no allegation whatsoever of mismanagement of the land, and the constitutional rationale set out in Jerke and Skillman is inapplicable. We hold that the Department's conclusion that Mr. Steffen is no longer entitled to his preference right represents an abuse of discretion.

An additional question is raised by the facts and the law in Skillman. Is Mr. Steffen's failure to file his sublease with the Department in 1977 a sufficient ground for denial of his right to the preference? This issue was not addressed by the Department's order; the failure to file was not discovered until the hearing before the Commissioner. Section 77-6-205(3), MCA, provides for discretionary cancellation of a renewal lease of state lands for a violation of the terms of the lease, but the violation must not have occurred more than 3 years prior to the date on which a notice of cancellation is issued. Since no notice of cancellation has been issued, and the unfiled lease was for the year 1977, the time limit for cancellation of the lease has passed. It is too late for denial of the preference on that ground.

8

We reverse the decision of the District Court and remand to the District Court for appropriate action to reinstate Mr. Steffen's preference right.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

9