JUSTICE WEBER
dissents as follows:
The majority affirmed the determination by the Workers’ Compensation Court that Loos was an employee rather than a sole proprietor. The majority affirmed the usage of the independent contractor test in reaching that conclusion. I disagree with the usage of the independent contractor test in this case.
The majority further concluded there was substantial credible evidence to support the Workers’ Compensation Court in its determination that Waldo did not sell the bar to Loos and did not intend to sell it. The record does not support that conclusion.
The Workers’ Compensation Court found that Waldo retained his right of control by ownership of the liquor license and his status as a signor on the bar checking account. Applying the control factor from Sharp v. Hoerner Waldorf Corp. (1978), 178 Mont. 419, 584 P.2d 1298, the Workers’ Compensation Court concluded that Loos was an *276 employee because this was direct evidence of the exercise of control by Waldo. The key part of the statute relied upon by the court is the following paragraph of § 16-4-406, MCA (1987):
(6) Upon a bona fide sale of the business operated under any license, the license may be transferred to a qualified purchaser. No transfer of any license ... shall be effective unless and until approved by the department, and any ... proposed transferee who operates ... under any supposedly transferred license prior to the approval of such transfer by the department,... shall be considered as operating without a license and the license affected may be revoked...
The Workers’ Compensation Court concluded that there was no sale of the business under the statute, and the absence of a license transfer provided Waldo with the right of control. The Workers’ Compensation Court stated:
Loos was allegedly leasing the bar from defendant Waldo. However, according to the statute above, it is only upon a sale of the business that a liquor license can be transferred. Therefore, since there was no sale and since none was intended, no transfer of the license could have taken place, even if Loos had not died. This retention of the liquor license provided defendant Waldo the right to control the operation of the bar.
I disagree with the conclusion that no sale occurred and that none was intended. The record does not contain evidence to support that conclusion. Following are portions of significant transcript testimony by Waldo, the previous owner and seller of the bar, which establishes that a sale was intended and in fact was made:
Q Did you operate this bar — Previously you testified that you had owned it since ‘84.
A Yeah.
Q Did you operate the bar from that time until September of ‘88? A Yes.
Q Did you sell the business and lease the building —
A Yes, I did.
Q — and the equipment to anyone in 1988?
A Yes, I did.
Q Who was that?
A Gary Loos.
*277 Q When did you start discussing with him the possibility of leasing the bar?
A During the summer of 1988.
Q What date did the sale and lease take place?
A September 14th, 1988.
Q What were the basic terms, the financial terms of this sale of the lease?
A $1000 a month for the lease on the building and the equipment, $280 a month for the insurance and he would buy the inventory and cash on hand.
Q Did you surrender complete control and convey everything to him on that day?
A Yes, I did. I didn’t even have a key for the building.
Q Was this — I think you’ve testified previously that this was an oral agreement on September 14th?
A Yes.
Q That no formal sale or lease documents had been signed on that date?
A The only thing that had been signed was the inventory we took. Q Did you and Gary intend to memorialize the terms of the lease in writing of the sale?
A Yes, we did.
Q When did you intend to do that?
A As soon as the paperwork got there from a friend of mine who had just leased her bar.
Q Now, where were the papers going to come from?
A From Marty Dreiling who owns the Ryegate Bar who has leased it to the DeBuffs who testified here today.
Q Did you and Gary discuss what the Ryegate deal was about and why you needed those papers?
A Yes, we did.
Q Did you discuss with him the type of agreement that you were going to receive in the mail?
A Yes.
Q And he agreed to go along with that form and to change the names and the dates and the amounts to fit your situation?
A Yes.
*278 Q Mr. Waldo, if you had received the lease agreement from Martha Dreiling on the 14th — You said you had called her on the 11th or 12th. If you had received it on the 14th as you thought you would, would all the paperwork have been completed very promptly?
A Yes, it would have.
Q On the next page it [Ryegate Bar agreement] says “Sale And Assignment of All-Beverage License”. The difference would be your number and how much was going to be paid. How much did you and Gary agree were going to be paid for the liquor license?
A $1.
Q What was the reason for a dollar?
A The reason for the dollar is the guy didn’t have that much money. And we were going to set it up in escrow, and the year-to-year lease would be that if he defaulted on the lease it would revert back to me.
Q Essentially, you were just wanting to get out of the bar business and the amount of the — had you received the rent money, that the amount you were selling the liquor license for wasn’t that important?
A That’s right, it wasn’t that important.
Q And you were talking about an escrow where you would get the liquor license back if he defaulted?
A Yes.
Q Now, did that mean he would pre-sign a transfer form on the liquor license that would go into escrow?
A Yes.
Q You testified earlier that once this was signed and you received it you were going to go down to a lawyer’s office and incorporate this with the transfer forms.
A Yes.
Q And is this something you had done previously —
A Yes.
Q — when you purchased the bar?
A When I purchased the bar, that’s the way it was done.
Q When you bought the bar, was your transfer already approved by the time you began to operate?
A No.
*279 Q On the 14th of September 1988, did Gary Loos own the business?
A Yes, he did.
Q Did he run it — Could he run it in any way he wished?
A Any way that he wanted to.
Q Could you fire him?
A Absolutely not.
Q Could you exercise any control over him?
A None whatsoever.
Q Could he order you off the premises?
A Yes, he could.
Q Did you have a key to the building?
A No. I did not.
Q Did you tell him how to do anything so far as operating the bar?
AI told him how to do nothing. He asked me a couple things and
I explained how I did it.
Q Did you pay him any wages?
A No. I didn’t.
The Workers’ Compensation Court incorrectly concluded that while counsel had briefed the issue of whether or not a contract existed, “dispositive in this case is defendant Waldo’s right of control over Loos.” As quoted above, the court concluded that according to the license transfer statute, it is only upon a sale that a liquor license can be transferred and since there was no sale here and none was intended, no transfer could have taken place. Two questions are raised by that conclusion. The first is whether the facts demonstrate the absence of a sale. The second is whether the failure to comply with the statute is sufficient to invalidate the sale.
With regard to the first point, it is clear that the uncontradicted facts rebut the holding that there was no sale and none was intended. I would reverse the factual determination of the Workers’ Compensation Court that there was no sale and none was intended. I would rely upon the holding of State Comp. Mut. Ins. Fund v. Lee Rost Logging (1992), 252 Mont. 97, 827 P.2d 85, and hold that the finding was not supported by substantial evidence and was, therefore, clearly erroneous.
The next question relates to the Workers’ Compensation Court’s application of § 16-4-404(6), MCA (1987), when it concluded there was a right of control under that statute which met factor one of the Sharp test for an employee rather than an independent contractor. That *280 section does not require such an interpretation. The section establishes that until a transfer of license has been approved by the department, such a transfer is ineffective for licensing purposes and a proceeding may be brought to revoke or suspend the license. I find nothing in the statute which allowed the court to conclude that the statute itself gave Waldo a right to control Loos. The Court apparently concluded that because the license had not yet been transferred, that necessarily gave Waldo the right to control Loos. The statute does not warrant such a conclusion by its wording. In addition, the facts as above set forth clearly indicate that Waldo did not intend to retain such a right of control and, in fact, did not exercise any such right of control. I conclude that the failure to complete the statutory procedure for license transfer did not give any measure of control to Waldo. I therefore conclude that the Workers’ Compensation Court and the majority incorrectly applied factor one of the Sharp test in concluding that Waldo retained control over Loos.
I again emphasize that in reaching this conclusion, the majority failed to rely upon the record but relied only upon the statute itself. Applying the four factors of the Sharp test, we must conclude as follows: (1) the record demonstrates no evidence of retention of a right of control by Waldo, (2) the method of payment did not demonstrate an employee relationship — in fact the record is totally absent of any proof to demonstrate that Waldo was to pay anything to Loos which could be classed as compensation, (3) no furnishing of equipment was present which would demonstrate an employee relationship, and (4) there was no right to fire on the part of Waldo. Because the record, without contradiction, establishes that the four factors stated in Sharp have not been proven, there is no basis to conclude there was an employee relationship rather than an independent contractor relationship.
The Fund was correct when it contended that Loos was a sole proprietor and exempt from the Workers’ Compensation Act under the facts of this case. The Act specifically does not apply to the employment of sole proprietors. Section 39-71-401, MCA (1987), in pertinent part states:
(2) Unless the employer elects coverage under this chapter and an insurer allows such an election, the Workers’ Compensation Act does not apply to any of the following employments:...
(d) employment of sole proprietors or working members of a partnership, except as provided in subsection 3;...
*281 (3)(a) A sole proprietor ... who holds himself out or considers himself an independent contractor ... must elect to be bound personally and individually by the provisions of compensation plan No. 1, 2 or 3 ...
Because the factual record demonstrates that Loos was not intended to be an employee and that the test demonstrating an employee relationship under Sharp had not been met, the issue remaining is whether or not Loos was a sole proprietor. The record demonstrates without contradiction that he was such a sole proprietor. Under the foregoing statute, a sole proprietor may be covered by the Act if he elects to be bound personally. Such election was not made here.
I conclude the Workers’ Compensation Court erroneously found there had been no sale of the business. I further conclude that even where the independent contractor test is applied, under the uncontradicted facts of this case, there was no control present. Last, I conclude that Loos was a sole proprietor and not an independent contractor and was not covered by workers’ compensation. I would hold, therefore, that Loos, in fact, was a sole proprietor and that in the absence of any election under the statute, he could not be classed as covered by the Act.
I would reverse the Workers’ Compensation Court.
JUSTICE GRAY concurs in the foregoing dissent.