WESTERN AIRLINES, INC., Plaintiff and Appellant, v.
CATHERINE J. MICHUNOVICH, et al., Defendants and
Respondents.

No. 11210.
Submitted February 9, 1967.   Decided April 24, 1967.
Rehearing denied June 15, 1967
428 P.2d 3.

Crowley, Kilbourne, Haughey, Hanson & Gallagher, Billings, Jardine, Stephenson, Blewett & Weaver, John D. Stepenson (argued), Great Falls, for appellant.

John L. Adams, Jr., County Atty., Harold F. Hanser (argued), Billings, William A. Douglas (argued), Helena, for respondents.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment rendered against the appellant Western Airlines for certain property taxes levied by respondents. The assessment in question was on flight property used by appellant in Montana in 1964. The appellant is a scheduled interstate airline company. On the assessment date in question, it owned and used three types of aircraft throughout its system: Boeing 720B's, Lockheed Electras and Douglas DC-6B's. The appellant's operations in Montana were limited to DC-6B piston aircraft. Neither the 720B jets nor the Electra prop jets were operated into or over Montana. In 1964, the appellant filed with the Board of Equalization the report required by Section 84-6403, R.C.M.1947. Upon being advised of a tentative assessment of its flight property at $1,190,000, appellant appeared before the Board to show cause why that figure should be lowered. The Board did not lower the assessment, but instead fixed it at the tentative figure of $1,190,000. It apportioned $371,263 of the assessed value to Yellowstone County, which then levied a tax of $16,688.99 thereon.

On November 30, 1964, appellant paid $763.85 of said tax to Yellowstone County. It paid the remaining $15,925.14 under written protest. This action was commenced to recover the $15,925.14 paid under protest. The facts were presented on stipulation to the district court judge, sitting without a jury. The court below gave a judgment in favor of appellants for

$5,039.23. In this appeal, appellant seeks to recover the balance under protest.

There are two fundamental issues presented. The first concerns the propriety of the formula used by the Board of Equalization to determine the value of flight property under the "unitary" method of taxation. The second issue is whether the depreciated value of aircraft should have been used in this formula rather than some higher figure.

The respondent used the "unitary" or "going concern" approach as distinguished from a direct *ad valorem* assessment. The "unitary" method represents an attempt to realize a fair assessment value on property which is not habitually located in any given state, but which is used extensively in interstate commerce. The underlying philosophy of the "unitary" method is that the property so used forms a part of an organic system and may be assessed in terms of the economic contribution which each component makes to the entire system. This approach has been firmly established in a series of decisions of the Supreme Court of the United States. Fargo v. Hart, 193 U.S. 490, 24 S.Ct. 498, 48 L.Ed. 761; Galveston, Harrisburg & San Antonio Ry. Co. v. State of Texas, 210 U.S. 217, 28 S.Ct. 638, 52 L.Ed. 1031; United States Express Co. v. State of Minnesota, 223 U.S. 335, 32 S.Ct. 211, 56 L.Ed. 459; Union Tank Line Co. v. Wright, 249 U.S. 275, 39 S.Ct. 276, 63 L.Ed. 602.

A good statement of the purpose and operation of the "unitary" method is found in Pullman Co. v. Richardson, 261 U.S. 330, 338, 43 S.Ct. 366, 368, 67 L.Ed. 682.

"And, if the property be part of a system and have an augmented value by reason of a connected operation of the whole, it may be taxed according to its value as part of the system, although the other parts be outside the state; in other words, the tax may be made to cover the enhanced value which comes to the property in the state through its organic relation to the system."

Thus the "unitary" method determines not only the apportionate share of the entire enterprise which may be taxed by each state but also determines the "enhanced value" attributable to the equipment used by virtue of its being a component part of the system. The "unitary" method assumes that the value of the entire system, as a going concern, is somewhat greater than the total fair market value of its equipment.

A critical issue in any form of taxation of tools used in interstate commerce is whether constitutional prohibitions on undue interference with interstate commerce have been violated. Western Airlines contend that they have.

In Pullman v. Richardson, supra, 261 U.S. at page 338, 43 S.Ct. at page 368 the Court said:

"In taxing property so situated and used, a state may select and employ any appropriate means of reaching its actual or full value as part of a going concern—such as treating the gross receipts from its use in both intrastate and interstate commerce as an index of measure of its value—and if the means do not involve any discrimination against interstate commerce and the tax amounts to no more than what would be legitimate as an ordinary tax upon the property, valued with reference to its use, the tax is not open to attack as restraining or burdening such commerce."

Let us examine the procedure used by the respondent Board. Section 84-6402, R.C.M.1947, provides for the taxation of flight property used by scheduled airlines in Montana. Section 84-6404, R.C.M.1947, provides for the manner in which the value of flight property may be determined. It states:

"The board shall determine the full and true valuation of all flight property operated or used by every scheduled airline company in air commerce in this state. In determining the valuation apportioned to this state of such flight property, the board may consider the proportion of total tonnage in the state, total time in equated plane hours, number of revenue ton miles

and number of arrivals and departures as required to be reported under section 84-6403."

The Board of Equalization examined the appellant's entire operation to determine what proportion of the four factors enumerated in Section 84-6404 could be attributed to appellant's business conducted in Montana. An average percentage of 3.3134% was arrived at in this manner which was then applied to the sum of Western Airlines' total stock and debt for all aircraft ready for flight and Western's total net earning capitalized at 6%. The resulting figure of $1,972,396.00 formed the basis for the assessment which is here in issue.

The appellant does not attack the use of the "unitary" method as such, but insists that it be applied only to that portion of their business arising directly from the use of DC-6B aircraft. The position of Western Airlines is that the result of applying the "unitary" technique to their whole operation is to tax those aircraft—Electras and 720B's—which were never in this state. It is clear from the record that the Board of Equalization never attempted to *directly* tax such aircraft.

▆ Chapter 64 of Title 84, R.C.M.1947, provides for the manner in which "flight property" used in Montana is to be assessed and taxed. There can be little doubt but that the Montana Legislature intended to employ a type of "unitary" taxation when the chapter is read as a whole. But we feel that the most significant problem which remains is whether the use of DC-6B aircraft in this state was sufficiently related to the balance of appellant's business to include in the assessment formula factors attributable to the use of other types of aircraft. For the sake of brevity, we shall refer to such factors as "jet values."

▆ The respondent stipulated to statistics introduced by appellant showing what percentage of passengers arriving in or departing from Montana on DC-6B's transferred to other types of planes. The maximum percent of such transfer passengers is agreed to be 0.76%, or 0.67% in terms of passenger

revenue miles. These figures are stated as theoretical maxims, with the actual percentage being closer to 0.50%. To the Court, these figures demonstrate a total lack of significant "organic unity" between the DC-6B operation and the rest of appellant's system. It is the concept of "organic unity" which permits the application of a "unitary" assessment and which at the same time limits the scope of this form of taxation. Even though this general technique may be permitted under Montana law— and we have concluded that it is—certain constitutional requirements must be satisfied. Otherwise the "unitary" method may become an octopus which extends the taxing power of the state beyond the legal limit.

Although Western Airlines offers basically the same type of service throughout its system and is a single going concern, it is the opinion of the Court that the concept of "organic unity" must include more than a mere managerial overlay. The stipulated facts clearly indicate that the DC-6B system was an independent line in that it bore no substantial relationship to the rest of appellant's system apart from carrying the same name, etc. We therefore believe that here it would be patently unjust to permit a "unitary" formula to consider "jet values." Since the use of the "unitary" method is intended to prevent excessive taxation, the taxing agency should bear a certain burden of showing the propriety of their action. It is true as a general rule that the taxpayer must overcome the presumption in favor of the correctness of the assessment. Statistics presented by appellant and stipulated to by the respondents at least indicate *prima facie* a lack of substantial relationship. The Board of Equalization, under such circumstances, should not be permitted to rely almost entirely upon legal presumptions which favor them. The ultimate issue is one of fact, not legal theory, and we feel that evidence presented by appellant is conclusive of the matter.

Our conclusion here is predicated upon finding a separate system operated with DC-6B aircraft. We might add paren-

thetically that the *type* of aircraft used is not the significant factor to be considered. In theory, all three types of planes used by appellant could have been employed in Montana in the same so-called "feeder line," and the same result would follow in the absence of a substantial relationship to other systems, assuming that these planes were used only within the "feeder line." The problem before us is simplified somewhat by the fact that only DC-6B's were used in this state, and the facts stipulated to as hereinbefore referred to demonstrated an "independent" rather than a "feeder" line.

It is not necessary for us to determine at this time what degree of inter-relationship must exist to extend the scope of the "unitary" method. We feel that less than one percent is clearly inadequate.

The formula used by the District Court in rendering its judgment eliminated "jet values" from the stock and debt portion of the equation but not from the capitalized earning index. We cannot find any logical justification for this approach; if "jet values" are properly to be considered, they should appear in both factors. If they are not to be considered —as we hold in this case—"jet values" should be eliminated from both the stock and debt figure and the capitalized earnings portion.

We now turn to consider whether the depreciated value of the DC-6B's should have been used by the respondent in the "unitary" method formula rather than some higher figure.

Clearly the use of a depreciated value would in no manner approximate the value of the aircraft to the appellant. The taxation policy contemplated by the "unitary" method is quite different from that permitting the use of depreciated values in other taxation situations. Appellant does not, and indeed cannot, argue that the depreciated value of the aircraft represents their actual worth.

The Board of Equalization assessed the aircraft at 98.398%

of their original cost, yielding a figure of $1,190,000.00. The depreciated figure sought by appellant would lower the assessment to $54,460.00. The highest price obtained for a DC-6B by appellant in the open market was $335,000.00. It is important to note that the "unitary" method tends to assess property at its value to the owner thereof. This figure might be more than the fair market value of the property. In Southern Ry. Co. v. Commonwealth of Kentucky, 274 U.S. 76, 81, 82, 47 S.Ct. 542, 71 L.Ed. 934, the Court said:

"The value of the physical elements of a railroad—whether that value be deemed actual cost, cost of reproducing new, cost of reproduction, less depreciation or some other figure—is not the sole measure of or guide to its value in operation."

While we are reluctant to approve the 98% plus figure used by the respondent, it is no less tenable than the depreciated figure sought by appellants. Since no intermediate amount is being sought by either party, we are constrained to recognize, in this instance, certain prerogatives enjoyed by the Board of Equalization. The amount of the resulting tax does not appear to us to be unreasonable or burdensome.

The parties have thoughtfully stipulated to alternative results which they agree should follow the conclusions of law established by this court. We have determined that "jet values" may not be considered, but that the 98% plus evaluation of the DC-6B's may be permitted to stand. The assessment of appellant's flight property should accordingly be reduced to $671,377. Of this amount, $209,469.62 should be apportioned to Yellowstone County, resulting in a tax of $9,416.08. Appellant is therefore entitled to a judgment for $7,272.91.

The case is remanded with instructions to enter judgment for appellants for $7,272.91.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES DOYLE, ADAIR and JOHN C. HARRISON concur.