No. 90-441

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

UNITED GRAIN CORPORATION,

        Petitioner and Appellant,

  -vs-

THE DEPARTMENT OF REVENUE OF THE STATE OF
MONTANA, AND THE STATE TAX APPEAL BOARD OF
THE STATE OF MONTANA,

        Respondent and Cross-Appellant.

**FILED**

MAY 20 1991

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA


APPEAL FROM:    District Court of the First Judicial District,
                 In and for the County of Lewis & Clark,
                 The Honorable Dorothy McCarter, Judge presiding.


COUNSEL OF RECORD:

       For Appellant:

       Terry B. Cosgrove; Luxan & Murfitt, Helena, Montana

       For Respondent:

       David L. Nielsen, Legal Counsel, Dept. of Revenue,
       Helena, Montana


Submitted on Briefs:  April 11, 1991

Decided:  May 20, 1991

Filed:

                            Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

The taxpayer, United Grain Corporation (United), appeals, and the Department of Revenue (DOR) cross-appeals an order of the First Judicial District Court, Lewis and Clark County, which reclassified certain property owned by United and which affirmed a prior valuation of said property. The District Court's holding reversed in part, remanded in part, and affirmed in part a prior decision of the State Tax Appeal Board (STAB). We affirm the District Court's order.

United raises the following issue on appeal:

(1) Whether DOR has properly determined the market value of United's grain elevators.

DOR raises the following issues on appeal:

(2) Whether the District Court erred in holding that the machinery in United's elevators is taxable as class four property rather than class eight property.

(3) Whether the District Court erred in ordering STAB to recalculate the value of the elevators based on the findings of the District Court regarding the rating of the facilities.

## FACTS

This appeal resulted from a dispute over DOR's tax assessment of three grain elevators owned by United. These elevators are all located in eastern Montana; one is in Macon, one is in Sprole, and the other is in Kershaw. United appealed DOR's 1986, 1987, and 1988 valuations of the elevators to the County Tax Appeal Board of

2

the appropriate counties. United then appealed each county board's decision to STAB. The separate appeals were consolidated and tried before STAB. STAB issued three separate decisions with separate findings of fact and conclusions of law. United then appealed STAB's orders to the District Court. United moved to consolidate; the District Court granted the motion on September 13, 1989.

On June 21, 1990, the District Court issued its order on United's appeal. First, the District Court reversed STAB's conclusion of law I and concluded that United's grain elevator machinery should be classified as class four rather than class eight. STAB's conclusion of law I states: "The Board finds that the machinery and equipment is properly classified by the DOR as class eight personal property, based on its use in moving raw material through an industrial distribution process." The District Court held that the machinery was not used in a manufacturing process, and, therefore, concluded that it could not be properly classified as class eight. From this decision, DOR appeals.

Second, the court reversed and remanded STAB's valuation of the machinery which is part of the Macon and Kershaw elevators, and held that STAB's finding of fact III was clearly erroneous and prejudiced United. The District Court held the following:

> The appraiser [for DOR] also rated the elevator [Kershaw] as excellent because he assumed that the elevator was capable of loading out 30,000 bushels of grain per hour.
>
> . . .
>
> [N]o evidence substantiates accepting DOR's figure incorporating Kershaw's alleged 30,000 bushel per hour capacity. This is clearly erroneous and substantially

3

affects the rights of United Grain.

. . .

[T]he value of what STAB terms "personal property"[1] should be adjusted to reflect that Macon [and Kershaw] has only a 15,000 bushel per hour capacity and not a 30,000 bushel capacity. The Court will not pursue this calculation in either the Kershaw or Macon case but leaves it to STAB to perform the mathematical gymnastics.

From this decision, DOR appeals.

Third, the court affirmed STAB in all other respects, including STAB's adoption of DOR's valuation method. From this particular decision, United appeals, arguing that its proposed "income" method should have been used to value its elevators rather than the "cost replacement" method proposed by DOR. Additional facts will be discussed as necessary.


STANDARD OF REVIEW

This Court has interpreted § 2-4-704, MCA, the standard for judicial review of an administrative ruling, to mean that an agency's findings of fact are subject to a "clearly erroneous" standard while an agency's conclusions of law are subject to the broader "correct interpretation" standard. Steer, Inc. v. Department of Revenue (Mont. 1990), 803 P.2d 601, 603, 47 St.Rep. 2199, 2200. Under the "correct interpretation" standard as applied to conclusions of law, our standard of review will be merely to determine if the agency's interpretation of the law is correct.

_____

[1]The court refers to STAB's finding of fact III and resulting order which incorporates DOR's appraisal of United's "personal property" at $205,689 for 1986, $216,169 for 1987 and at $181,102 for 1988.

4

Steer at 603.

I

The first issue for review is whether DOR's valuation of United's elevators was proper. United contends that DOR erred in using the cost replacement method to evaluate United's three elevators, and asserts that the income method should have been used:

> We will not evaluate the advantages and disadvantages of a particular assessment method as applied to a taxpayer. "Tax appeal boards are particularly suited for settling disputes over the appropriate valuation of a given piece of property or a particular improvement, and the judiciary cannot properly interfere with that function." (Citations omitted) Assessment formulations are within the expertise of the State Tax Appeal Board and we will not overturn their decisions unless there is a clear showing of an abuse of discretion.

Northwest Land v. State Tax Appeal Board (1983), 203 Mont. 313, 317, 661 P.2d 44, 47. DOR has determined that the cost replacement method is the most appropriate method of measuring the value of hard assets and has promulgated rules to that effect. We have reviewed the entire record and find that United has not overcome its burden to show clear abuse in DOR's application of the cost replacement method to determine the market value of the elevators. Therefore, we hold that the District Court properly affirmed STAB's valuation of United's elevators based on the cost replacement method.

II

The second issue is whether the District Court erred in

holding that the machinery used in conjunction with United's elevators is taxable as class four, rather than class eight, property.

All taxable property in Montana is classified under Title 15, Chapter 6, Part 1, MCA, according to its use and type, for the purpose of determining the taxable value of the property. Section 15-6-138, MCA, provides:

(1) Class eight property includes:

. . .

(c) all manufacturing machinery, fixtures, equipment, tools that are not exempt under 15-6-201(1)(r), and supplies except those included in class five.

On the other hand, § 15-6-134, MCA, together with ARM 42.22.1303, requires that if the machinery is used in a storage facility it is properly classified as class four.

The machinery that moves the grain in and out of the elevator storage bins is at the heart of this dispute. This machinery is used to carry grain from the trucks into the storage bins and out again. It is much like a conveyor belt with buckets which carries the grain from one place and dumps it off at another. The machinery is designed specifically for a particular elevator.

United argues that the machinery is part and parcel of the storage facilities and, therefore, an improvement to the land pursuant to ARM 42.22.1303 and classified as class four. Furthermore, United argues that the machinery is not involved in a manufacturing process and, therefore, cannot be classified as class eight. DOR, on the other hand, contends that the machinery

should be within class eight, arguing that it is part of a manufacturing process.

The fact that the grain elevators are used as storage facilities is not contested by either party. What is contested is whether the conveyor belts and other machinery, which are used to merely transport the grain into and out of the storage facilities, are involved in a manufacturing process. We think not.

The outcome here depends upon the definition of the word "manufacturing" in § 15-6-138, MCA. Manufacturing machinery is that "used to transform raw or finished materials into something possessing a new nature or name and adapted to a new use." ARM 42.22.1305. Therefore, the question is whether or not the subject machinery fits within the above definition of the word "manufacturing."

Regarding the machinery of the Sprole elevator, the record shows that United used this facility for the sole purpose of storing its crop. No other activity went on at this elevator. Grain was merely dumped into this elevator for storage until it was finally sold on the market at a later date. The simple movement of grain from the truck to a storage bin does not constitute manufacturing. Manufacturing property requires more than mere movement of grain from one place to another; there must be a transformation. ARM 42.22.1305. Such an activity does not occur at the Sprole elevator. Therefore, STAB's conclusion that this machinery belongs to class eight is incorrect. As such, we hold that the District Court properly reversed STAB's decision in this

7

regard.

Considering the Macon and Kershaw elevators, the grain at these elevators is stored, as well as mixed, occasionally, in order to obtain a grain of a particular protein content. DOR contends that this mixing is enough to constitute manufacturing. We disagree, and hold otherwise.

A review of case law indicates that whether a process constitutes "manufacturing" turns upon whether the end product of the disputed process is "significantly changed" from the original substance. Reynolds Metal Co. v. State Tax Commission (Wash. 1965), 400 P.2d 310, 314; Bornstein Sea Foods, Inc. v. State Tax Commission (Wash. 1962), 373 P.2d 483, 486. The statutes do not define "manufacturing" but the administrative regulations define "manufacturing property" as that "used to transform raw or finished materials into something possessing a new nature or name and adopted to a new use." ARM 42.22.1305. Furthermore, Webster defines "transform" as "to change in composition or structure" or "to change in character or condition." Webster's New Collegiate Dictionary (1977).

The District Court concluded that:

> No transformation takes place at the Macon and Kershaw elevators. The grain is not cleaned, aerated, or milled. Occasionally, grains of differing protein content may be mixed to create a grain of a desired content but the grain is not mixed with other chemicals or incorporated into some other material. The product that goes into the storage bins is virtually identical to the product that comes out. There is no new name, nature, or use. While some type of processing may go on at the elevators, "manufacturing" as it is defined in ARM 42.22.1305 does not. Therefore, it is the opinion of this Court that the disputed property cannot be placed

8

in class eight as manufacturing property. Rather it is part and parcel of the storage facilities and belongs in class four as an improvement to land.

Mixing grains of varying protein contents does not produce an end product that is "significantly changed." We, therefore, agree with the District Court's reasoning and holding as set out above. The Macon and Kershaw elevators are storage tanks and the occasional mixing of the grain does not turn these facilities, or the respective machinery, into manufacturing property.

In the alternative, DOR argues that the machinery should be class eight property under the catch-all provision of § 15-6-138(1)(g), MCA (1985). Section 15-6-138, MCA (1985) states:

(1) Class eight property includes:

. . .

(g) all other machinery except that specifically included in another class.

DOR argues that the District Court erred because it did not consider this provision when classifying the machinery. To the contrary, the District Court specifically held that the machinery "is part and parcel of the storage facilities and belongs in class four as an improvement to land." As such, the District Court concluded that the machinery is "specifically included in another class" and, therefore, does not fall within the catch-all provision of § 15-6-138(1)(g), MCA (1985). We have adopted the District Court's holding and, therefore, conclude that the machinery is specifically included in class four as an improvement to land.

9

The last issue raised by DOR is whether the District Court erred in ordering STAB to recalculate the value of the elevators based on the findings of the District Court regarding the rating of the facilities.

With regard to the elevators at Kershaw and Macon, the department's appraiser, Gary Spaulding, rated the elevators as excellent. The record shows that the appraiser based this "excellent" rating on his mistaken belief that these elevators, together with their machinery, could unload grain into freight cars at a rate of 30,000 bushels per hour. Apparently the appraiser assumed that because there were two legs[2] that each could run 15,000 bushels per hour, the facility had a 30,000 bushel per hour capacity. United contends that its elevators can only load at a rate of 15,000 bushels per hour. At 15,000 bushels, the equipment would be rated as "good" rather than "excellent" and its value would drop.

At the STAB hearing, Bill Rittal of Great Falls, Montana, supervisor for United, testified that the capacity was rated at 15,000 bushels per hour, even though the elevators had two legs each of which where capable of handling 15,000 bushels per hour. He explained that even though the legs can run simultaneously, only one is capable of moving grain at any particular time because the conveyor from the two adjacent tanks can only run into one leg at

_____

[2]The "legs" of the elevator function much like a conveyor belt; they transport grain into and out of each particular storage bin.

a time. He testified that without major design changes neither the Macon nor the Kershaw elevator has the capacity to load 30,000 bushels per hour.

DOR admits in its brief that the elevators have a load capacity of less than 15,000 bushels per hour:

> Even though the maximum capacity might be 15,000 rather than 30,000, there is still the ability of the elevator to load out two-52 car trains in a 24 hour period.

Although it is not obvious at first glance, simple arithmetic establishes the fact that an elevator which can load out two 52-car trains in a 24-hour period can load out at a rate of approximately 14,000 bushels per hour. This fact is illustrated by Mr. Rittal's testimony at the STAB hearing as follows:

> There are elevators with more than two legs in them and they don't take the combination of those legs . . . testimony was given yesterday that it takes 12 hours to load a 52 car unit train. There's 172,000 bushel in a 52 car unit train. If it takes 12 hours, that computes out to about a little over 14,000 bushel per hour. That is what our houses are rated at . . . .

The foregoing evidence was ignored by STAB in its findings and conclusions. Further, no evidence substantiates accepting DOR's figure which incorporates this alleged 30,000 bushel per hour capacity. We, therefore, conclude that STAB's finding in this regard is clearly erroneous. Since this finding directly impacts on the amount of taxes United owes, we also conclude that the erroneous finding substantially affects the rights of United. Therefore, we hold that this finding, according to Rule 52(a), M.R.Civ.P., was properly set aside by the District Court in favor of its own finding, which is supported by substantial, credible

11

evidence, that the subject elevators have a load capacity of 15,000 bushels per hour. Furthermore, we hold that the District Court properly remanded this case to STAB with instructions that the value of what STAB terms "personal property" should be properly adjusted, in every respect, to reflect its findings that the Macon and Kershaw elevators have a load capacity of only 15,000, rather than 30,000, bushels per hour. We have reviewed the entire record on appeal and find no error. The District Court is hereby affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices