No. 95-130

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

FARMERS UNION CENTRAL
EXCHANGE, INCORPORATED,
d/b/a CENEX,

    Petitioner and Appellant,

v.

THE DEPARTMENT OF REVENUE
OF THE STATE OF MONTANA,
and THE STATE TAX APPEAL
BOARD OF THE STATE OF MONTANA,

    Respondents and Respondents.

**FILED**

AUG 17 1995

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable William J. Speare, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

    David A. Veeder; Veeder Law Firm, Billings, Montana

    For Respondents:

    Lawrence G. Allen, Special Assistant Attorney
General, Montana Department of Revenue, Helena,
Montana

Submitted on Briefs:   June 20, 1995

Decided:   August 17, 1995

Filed:

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

The Thirteenth Judicial District Court, Yellowstone County, affirmed a decision of the State Tax Appeal Board (STAB) concerning the proper tax classification of certain property owned by Farmers Union Central Exchange, Inc., d/b/a Cenex. Cenex appeals. We affirm.

The issues before us are whether the District Court applied the correct standard of review and whether it erred in affirming STAB's conclusion that the disputed property was class eight property rather than class four property.

This action involves the classification, for state tax purposes, of equipment and machinery added to the Cenex oil refinery complex near Laurel, Montana, in 1991. The refinery complex is comprised of a raw material storage facility, a refinery processing facility, and a product blending and storage facility.

An industrial appraiser for the Department of Revenue (DOR) classified and appraised the new property for the year 1992. He determined that the property here in dispute was class eight property pursuant to § 15-6-138(1)(c) and (o), MCA.

Section 15-6-138(1)(c), MCA, provides that "all manufacturing machinery, fixtures . . . [and] equipment" is class eight property. The items of property so classified included a boiler house fuel gas manifold, cooling tower header improvements, a coal filter bed upgrade, three parts of a hydrocarbon loss recovery system, a plant air drier, an opticrom ADV gasoline chromatograph, a Grabner CCA-V, an alky unit KOH scrubber, two oxygen analyzers,

2

asphalt product handling improvements, a crude truck unloading system for tank storage, a heavy product flash point tester, and two spare fuel oil pumps.

Section 15-6-138(1)(o), MCA, provides that "all other property not included in any other class in this part" shall be taxed as class eight property. The DOR appraiser placed eight hydrogen sulfide and carbon dioxide monitors, a breathing air compressor, a manlift, and tank level gauges in this category.

Cenex appealed the DOR's assessment, arguing that some items of property had been improperly classified as class eight property. It contended that these items are components of a storage facility and, as a result, are class four property under § 15-6-134, MCA. The rate of taxation is significantly lower for class four property than for class eight property.

The Yellowstone County Tax Appeal Board granted Cenex the class four classification it requested on most of the disputed property, with the exception of some computer software. The DOR then appealed to STAB, which reversed the decision of the Yellowstone County Tax Appeal Board and affirmed the DOR's appraisal and classification regarding the twenty-eight items at issue here.

Cenex petitioned the District Court for judicial review. The District Court affirmed STAB's decision, thus upholding the DOR's appraisal and classification. Cenex now appeals to this Court.

Issue 1

Did the District Court apply the correct standard of review?

The standards for judicial review of administrative decisions, such as those of STAB, are set forth in § 2-4-704, MCA. This Court has interpreted § 2-4-704, MCA, to mean that an agency's findings of fact are subject to a "clearly erroneous" standard of review, while an agency's conclusions of law are reviewed to determine whether they are correct. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474, 803 P.2d 601, 603.

In the present case, STAB specifically concluded as a matter of law that "[t]he disputed properties have been properly classified in class eight." In reviewing that determination, the District Court reasoned:

> At the outset this Court finds that despite [Cenex's] contentions that there are no disputes with the Tax Appeal Board's Findings of Fact, this Court disagrees. The whole matter of fixing a classification of property is factual as well as legal. In short it is a mixed matter of fact and law. This becomes important when the Court makes its determination as to the standard of review.

The District Court applied the three-part "clearly erroneous" standard of review for findings of fact set forth in State Comp. Mut. v. Lee Rost Logging (1992), 252 Mont. 97, 102, 827 P.2d 85, 88.

This Court has stated:

> In reviewing conclusions of law, questions of law, or legal components of ultimate facts, or mixed questions of law and fact, we will decide if the . . . determination as to law is correct.

Maguire v. State (1992), 254 Mont. 178, 182, 835 P.2d 755, 757-58. Maguire clarifies that only "pure" findings of fact are reviewed under the clearly erroneous test. The issue of the proper

4

classification of property is reviewed under the "correct interpretation" standard. See United Grain v. Department of Revenue (1991), 248 Mont. 297, 301-03, 811 P.2d 555, 558-59.

The District Court should have reviewed STAB's conclusion that the DOR had properly classified the property in class eight for its correctness as a matter of law. We conclude, therefore, that the District Court applied the wrong standard of review.

We have stated, however, that where a district court reaches the correct result, the decision will be affirmed regardless of the court's reasoning. See Lindey's, Inc. v. Goodover (1994), 264 Mont. 449, 453, 872 P.2d 764, 766 and Tisher v. Norwest Capital Mgt. & Trust (1993), 260 Mont. 143, 153-54, 859 P.2d 984, 990. We proceed, therefore, to an analysis of whether STAB's decision was correct as a matter of law.

Issue 2

Did the District Court err in affirming STAB's conclusion that the disputed property was class eight property rather than class four property?

The parties agree that the property at issue in this case is properly classified as either class four or class eight property. The property within these classes is set forth in §§ 15-6-134 and 15-6-138, MCA, respectively.

Class four property includes, in pertinent part, "all improvements, including trailers or mobile homes used as a residence, except those specifically included in another class." Section 15-

5

6-134(1)(b), MCA.   ARM 42.22.1303 further elaborates that "all storage facilities shall be treated as improvements to land."

Class eight property includes, in pertinent part, "all manufacturing machinery, fixtures, equipment . . . [and] all other property not included in any other class in this part."   Section 15-6-138(1)(c) and (o), MCA.

STAB determined that the Cenex property did not constitute class four "improvements."   It reasoned that the property was part of an overall manufacturing process and was not part of a storage facility which might then warrant consideration as improvements to land.   Therefore, STAB classified each of the twenty-eight items as class eight property, under § 15-6-138(c) and (o), MCA.

Cenex argues that the disputed property is not directly used in the manufacturing process and, as a result, that it is class four property rather than class eight property.   It cites the testimony of its expert witness, Martin Perga, a chemical engineer employed by Cenex for many years.   He testified to the specific use of each item of disputed property.   Cenex contends that examining the use of each of the twenty-eight disputed items of property establishes that the property either is not used in the manufacturing process or is part of a storage facility.

At the STAB hearing, Cenex bore the burden of proving that the DOR's classification was incorrect.   See Western Airlines, Inc. v. Michunovich (1967), 149 Mont. 347, 353, 428 P.2d 3, 7, cert. denied 389 U.S. 952 (1967).   Perga, Cenex's sole witness as to the actual classification of the property, admitted he did not have experience

6

in property tax classification and had not reviewed the relevant Montana property tax classification statutes. On the other hand, during his testimony, the DOR's appraiser substantiated the statutory and administrative rule bases for his classification of each item of contested property. Thus, we conclude that to the extent its argument is based upon Perga's testimony, Cenex failed to overcome the presumption that the DOR's classifications are correct.

Cenex also relies heavily upon this Court's language in United Grain, where we stated that "§ 15-6-134, MCA, together with ARM 42.22.1303, requires that if the machinery is used in a storage facility it is properly classified as class four." United Grain, 811 P.2d at 557. Cenex argues that seventeen items were incorrectly classified under § 15-6-138(1)(c), MCA, as part of a manufacturing, rather than a storage, facility.

Cenex's reliance on United Grain ignores the important distinction we drew in that case between storage and manufacturing facilities. The distinction is based on whether the end product was "significantly changed" from the material entering the facility:

> A review of case law indicates that whether a process constitutes "manufacturing" turns upon whether the end product of the disputed process is "significantly changed" from the original substance. The statutes do not define "manufacturing" but the administrative regulations define "manufacturing property" as that "used to transform raw or finished materials into something possessing a new nature or name and adopted to a new use."

7

United Grain, 811 P.2d at 558 (citations omitted). Thus, our resolution of this case depends in large part on whether STAB erred in concluding, based on the evidence before it, that the disputed property which the DOR classified under § 15-6-138(1)(c), MCA, was part of a manufacturing facility as we defined it in United Grain.

Perga testified that the refinery at Laurel receives crude oil by pipeline or truck and stores it in tanks. The processing unit draws on the crude oil contained in the storage tanks to make a number of intermediate products. Several product streams are then blended to achieve a final product. According to Perga, the blending of five product streams to produce a finished product with a given octane ratio was not a "transformation."

While Perga's opinion that no transformation occurred may be correct within the purview of chemical engineering, it is not correct within the purview of the law. Indeed, Perga's testimony supports STAB's conclusion that the process which involved the disputed property is a manufacturing process rather than a storage process under United Grain.

Cenex receives crude oil, processes it into intermediate products which differ from the crude oil received and then blends those products into a finished product. Cenex does not market any of the intermediate products separately; the blending is a necessary process for achieving a finished product marketable by Cenex. Thus, "the end product . . . is 'significantly changed' from the original substance" received by Cenex. See United Grain, 811 P.2d at 558. The property the DOR classified as class eight

8

under § 15-6-138(1)(c), MCA, is used in connection with the process of transforming materials into something possessing a new nature and, therefore, it constitutes manufacturing property. See United Grain, 811 P.2d at 558. STAB cogently summarized the dissimilarity between the facility in this case and the facility we determined to be a storage facility in United Grain as follows:

> The most conclusive disparity in attempting to use United Grain as a probative foundation for Cenex, lies in the contrasts between the two firms in the performance of the acts of storage. United Grain is a storage business; it can provide a storage service for customers or for itself; it may accept products from a large clientele; it does no manufacturing; it sells its product to a large class of potential buyers and users.
>
> By contrast, from the record, Cenex does not have or solicit storage customers; no businesses bring materials or products to be stored; Cenex does not sell intermediate products for itself or others for purposes not related to its refinery function and activities, including the processing and sale of waste products. Cenex is an integrated manufacturer; its products are designed to be produced by it and to be sold through its own network of outlets. . . . We repeat, Cenex performs storage functions but it is not a storage facility.

Finally, Cenex incorrectly asserts that class eight property includes only property used directly in a manufacturing process. While it is true that § 15-6-138(1)(c), MCA, specifically includes manufacturing machinery, fixtures, equipment, and tools, § 15-6-138(1)(o), MCA, includes as class eight property "all other property not included in any other class in this part." The words "in this part" clearly relate to all of Title 15, Chapter 6, part 1, MCA, which is captioned "Classification" and includes class one property through class twelve property. Thus class eight property,

including the eleven items here classified under subsection (1)(o), is not limited to property used directly in a manufacturing process.

We conclude that STAB did not err in classifying the disputed items of Cenex property as class eight property. Therefore, we hold that the District Court did not err in affirming STAB's decision.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

10