This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                  **NO. 30,047**

**JONATHAN SOTO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**William G. W. Shoobridge, District Judge**

Gary K. King, Attorney General
Andrea Sassa, Assistant Attorney General
Santa Fe, NM

for Appellee

Jacqueline L. Cooper, Acting Chief Public Defender
Karl Erich Martell, Assistant Appellate Defendanter
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**FRY, Judge.**

Defendant appeals his convictions for armed robbery and conspiracy to commit armed robbery. He raises two issues on appeal, contending that: (1) the district court

erred in excluding evidence regarding Defendant's polygraph results relating to a separate charge of intimidation of witnesses, and (2) there was insufficient evidence to sustain his convictions. For the reasons that follow, we affirm.

**BACKGROUND**

Defendant was charged with armed robbery and conspiracy to commit armed robbery stemming from an incident that occurred on June 22, 2008. At trial, the State called the victims, Michael and Rebeckah McKnight, and the investigating detective, Robert Riddle. The district court heard testimony that Mr. and Mrs. McKnight were at a bar celebrating Mrs. McKnight's birthday. When the McKnights left the bar and returned to their truck in the bar's parking lot, they were confronted by a group including Defendant, Christopher Martinez, and two women. The two women attempted to enter the McKnights' truck, but Mr. McKnight was able to resist the women's attempt. The women returned to a red four-door passenger car where Defendant and Martinez were sitting. The McKnights noticed that the group was watching them, and they became concerned for their safety. Mrs. McKnight backed the truck out of the parking lot and drove to a nearby gas station where the couple stopped to search the vehicle for a pistol that had been in the truck. The group followed the McKnights to the gas station where Defendant and Martinez, wearing bandanas and sunglasses covering their faces, exited the red car and approached the

McKnights' truck. Martinez pointed a shotgun at the couple as Defendant shouted orders, demanding the truck and telling the McKnights to give them their money. Defendant grabbed Mrs. McKnight by the neck, pushed her and told her to "get away," and the couple subsequently surrendered the vehicle. The men got into the truck and drove off, following the women in the red car.

Detective Riddle testified that he investigated the incident as the on-call detective on the night of the robbery. After the robbery, Detective Riddle was called to a home where first-responding officers had located Defendant, Martinez, and the stolen truck. Detective Riddle found a camera in the house that Mrs. McKnight later identified as being from inside the stolen truck. Detective Riddle also recovered clothing and two black bandanas from the home that matched the description given by the McKnights. The McKnights were contacted and identified Defendant and Martinez that same night. The McKnights testified that they were able to identify Defendant and Martinez, despite the bandanas covering their faces at the time of the carjacking, because they had previously seen them in the bar parking lot without their faces covered. Defendant and Martinez were wearing the same clothing, they were with the same group of people, and they were driving in the same vehicle as when the McKnights had seen them without their faces covered only a few minutes earlier in the bar parking lot. The McKnights were also able to identify Martinez because of

Martinez's distinctive tattoos. Defendant was subsequently charged with armed robbery and conspiracy to commit armed robbery.

On July 30, 2008, approximately five weeks after the incident, the McKnights reported that Defendant had come to their home and intimidated them. Defendant voluntarily submitted to polygraph testing regarding the new allegations. The results found no deception when Defendant stated that he had not been to the McKnights' residence at any time after his arrest. Defendant was not asked any questions regarding the underlying armed robbery.

Defendant sought to introduce the polygraph results to attack the McKnights' identification of him in connection with both the initial armed robbery and the witness intimidation charged in a separate case. The State filed a motion in limine to prevent Defendant from bringing evidence relating to the polygraph. The State argued that the polygraph evidence was irrelevant because it related to a separate charge and not to the armed robbery or conspiracy charges at issue in the present case. Defendant argued that if the McKnights misidentified him as the person who had intimidated them at their home, it was more likely that they misidentified him in the underlying armed robbery as well, particularly because Defendant was wearing a bandana over his face at the time of the armed robbery, but the McKnights had not reported that the person who intimidated them had his face covered. The district court granted the

4

State's motion in limine, finding that the evidence was not relevant to any issue, that it did not go directly to the issue of identification, and that the probative value of the evidence was outweighed by its prejudicial effect. Defendant was subsequently convicted on both charges. This appeal followed.

**DISCUSSION**

**1.    Polygraph**

On appeal, Defendant argues that the district court erred by excluding evidence regarding the polygraph examination that Defendant took in connection with the witness intimidation charge. Defendant argues that his constitutional rights to confront witnesses and to present a defense were violated by the district court's ruling.

We first address the State's contention that Defendant failed to preserve this argument. While a defendant need not expressly cite the Confrontation Clause at trial in order to preserve such a claim, *see State v. Martinez*, 1996-NMCA-109, ¶ 12, 122 N.M. 476, 927 P.2d 31, for reasons discussed below, we hold that something more is required than was done by Defendant in this case.

Here, Defendant's theory of admissibility tendered at the hearing on the State's motion in limine was that the polygraph evidence was relevant to the issue of identification. Defendant argued that "one of the big issues in this case [was] identification" and stated that the polygraph evidence was relevant because it

5

"rebut[ted] the testimony of Mr. McKnight saying that he has identified [Defendant]." Defendant's argument did not adequately alert the district court to the presently asserted constitutional error and, therefore, Defendant did not properly preserve his claim for appeal. *See State v. Flanagan*, 111 N.M. 93, 98, 801 P.2d 675, 680 (Ct. App. 1990) (stating that the purpose of the preservation rule is to "apprise the trial court of the nature of the error and invoke an intelligent ruling on the issue"). "[S]ince the issue of denial of the right to confrontation may not be raised for the first time on appeal, we will not address [the d]efendant's Sixth Amendment issue, but only the district court's grant of the [s]tate's motion in limine on an evidentiary basis." *State v. Riley*, 2010-NMSC-005, ¶ 26, 147 N.M. 557, 226 P.3d 656 (citation omitted); *see State v. Torres*, 2005-NMCA-070, ¶ 20, 137 N.M. 607, 113 P.3d 877.

The district court has broad discretion regarding the admission or exclusion of evidence, and a district court's evidentiary ruling will not be disturbed on appeal absent an abuse of that discretion. *See State v. Stampley*, 1999-NMSC-027, ¶ 37, 127 N.M. 426, 982 P.2d 477; *State v. Brown*, 1998-NMSC-037, ¶ 32, 126 N.M. 338, 969 P.2d 313. In order to find an abuse of discretion, this Court must conclude that the district court's decision was "obviously erroneous, arbitrary, or unwarranted." *Brown*, 1998-NMSC-037, ¶ 39 (internal quotation marks and citation omitted). Specifically, this Court reviews a district court's admission of polygraph evidence for an abuse of

discretion, and the district court's ruling "will be disturbed on appeal only when the facts and circumstances of the case do not support the logic and effect of the ruling in question." *State v. Harrison*, 2000-NMSC-022, ¶ 40, 129 N.M. 328, 7 P.3d 478 (internal quotation marks and citation omitted); *see* Rule 11-707 NMRA.

Defendant argues that any evidence indicating that the McKnights misidentified him as the individual who visited the victims' home and intimidated them has a tendency to make it more probable that the McKnights misidentified Defendant in the underlying armed robbery as well. We disagree. The polygraph results showed nothing more than that Defendant had not been deceptive when he said he had not been to the McKnights' residence at any time after his arrest. While this fact may have been relevant to the charge of witness intimidation in the other case, it was not relevant to anything in the present case. The polygraph results did not make misidentification following the carjacking more or less probable, and the district court properly exercised its discretion in excluding it. *See* Rule 11-401 NMRA (defining "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" (internal quotation marks omitted)).

In addition, even if the polygraph evidence was relevant, the district court properly excluded it under Rule 11-403 NMRA, which provides that the district court

may properly exclude evidence if the "probative value [of the evidence] is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence." *State v. Rosales*, 2004-NMSC-022, ¶ 12, 136 N.M. 25, 94 P.3d 768 (alteration in original) (internal quotation marks and citation omitted). The district court could have properly determined that the admission of the polygraph evidence would have caused unnecessary confusion of the issues, resulting in a mini-trial on the collateral issue of whether Defendant was accurately identified by the McKnights in the witness intimidation case. *See State v. Gibson*, 113 N.M. 547, 555, 828 P.2d 980, 988 (Ct. App. 1992) (holding that testimony by the defendant's prior attorney to explain that husband-wife privilege would not apply if the defendant married a witness to prevent testimony against him could be excluded as confusing, rather than enlightening the jury; issue was whether the defendant thought that marriage could prevent witness from testifying, not whether the defendant's view of law was correct). We therefore affirm on this issue.

**2.     Sufficiency of the Evidence**

Defendant argues, pursuant to *State v. Franklin*, 78 N.M. 127, 129, 428 P.2d 982, 984 (1967) and *State v. Boyer*, 103 N.M. 655, 658-60, 712 P.2d 1, 4-6 (Ct. App. 1985), that the evidence presented at trial was insufficient to result in his convictions for armed robbery and conspiracy to commit armed robbery.  Our review of a sufficiency of the evidence question involves a two-step process.  *See State v. Apodaca*, 118 N.M. 762, 766, 887 P.2d 756, 760 (1994).  Initially, we view the evidence in the light most favorable to the verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict, and then we must "make a legal determination of whether the evidence viewed in this manner could justify a finding by any rational trier of fact that each element of the crime charged has been established beyond a reasonable doubt."  *Id.* (internal quotation marks and citation omitted).  The question is whether the district court's "decision is supported by substantial evidence, not whether the [district] court could have reached a different conclusion."  *In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 15, 121 N.M. 562, 915 P.2d 318.  "The reviewing court does not weigh the evidence or substitute its judgment for that of the fact finder as long as there is sufficient evidence to support the verdict."  *State v. Mora*, 1997-NMSC-060, ¶ 27, 124 N.M. 346, 950 P.2d 789, *abrogated on*

*other grounds as recognized by Kersey v. Hatch*, 2010-NMSC-020, 148 N.M. 381, 237 P.3d 683.

The evidence at trial showed that Defendant and Martinez watched the McKnights from a car as they sat in their truck in the bar parking lot and then followed them to a gas station down the road. Defendant and Martinez wore bandanas and sunglasses to disguise their identities, while Martinez wielded a shotgun and Defendant shouted commands to the victims to get away from the truck and to give up their money. Defendant grabbed Mrs. McKnight by the neck and pushed her away. He then got into the truck and drove away with Martinez. Defendant was later found at a home with Martinez, the stolen truck, and other evidence of the crime. Defendant was identified by the McKnights who testified that they were able to recognize him because he was wearing the same clothing, with the same group of people, and in the same vehicle when they had seen him only minutes earlier without his face covered.

To convict Defendant of armed robbery, the State had to prove beyond a reasonable doubt that (1) Defendant took a pickup truck from Michael McKnight intending to permanently deprive him of the truck; (2) Defendant was armed with a firearm; (3) Defendant took the pickup truck by threatened force or violence; and (4) this happened in New Mexico on or about June 22, 2008. NMSA 1978, § 30-16-2 (1973). Defendant claims that the McKnights' identification of him when he was a

masked participant in the armed robbery is insufficient to meet the requirement that crimes be proven beyond a reasonable doubt. The verdicts demonstrate that the jury found the McKnights' testimony credible regarding their identification of Defendant and rejected Defendant's theory that he was misidentified. The jury is vested with sole authority to determine the veracity of the McKnights' and Detective Riddle's testimony and to determine the facts after assessing the credibility of all witnesses. *See State v. Shirley*, 2007-NMCA-137, ¶ 29, 142 N.M. 765, 170 P.3d 1003 (recognizing that the jury determines credibility of witnesses and is not obligated to "adopt [the d]efendant's view" (internal quotation marks and citation omitted)). Given the ample evidence in this case, we cannot say that Defendant's armed robbery conviction was not supported by sufficient evidence. *See State v. Sparks*, 102 N.M. 317, 320, 694 P.2d 1382, 1385 (Ct. App. 1985) (defining substantial evidence as evidence which a reasonable person would consider adequate to support a defendant's guilt).

Defendant also argues that there was insufficient evidence to support his conviction for conspiracy to commit armed robbery because the evidence presented could also be consistent with a theory that Defendant was a mere hostage of Martinez, not a willing participant in the crime. First, we observe that upon review of the trial transcripts we found no reference to any theory that Defendant was a hostage of

11

Martinez, nor did we find any evidence to support such a theory. In fact, Defendant pursued an entirely different theory at trial, arguing that he was misidentified as the perpetrator. Whether Defendant was a willing participant in the crime or a hostage is a factual matter that is not properly raised on appeal for the first time; it is a matter of weight and credibility for the jury to decide. *State v. Salas*, 1999-NMCA-099, ¶¶ 11, 13, 127 N.M. 686, 986 P.2d 482 (recognizing that it is for the fact finder to resolve any conflict in the testimony of the witnesses and to determine where the weight and credibility lay). Had Defendant wished to pursue such a theory, he should have based it on evidence presented, argued the theory at trial, and requested an appropriate jury instruction.

However, even if we were to reach the merits of Defendant's argument, we would remain unpersuaded. "Conspiracy consists of knowingly combining with another for the purpose of committing a felony within or without this state." NMSA 1978, § 30-28-2(A) (1979). The crime of conspiracy "is complete when the felonious agreement is reached. Such an agreement need not be proven by direct evidence; the agreement may be in the form of a mutually implied understanding and may be inferred from circumstantial evidence." *State v. Johnson*, 2004-NMSC-029, ¶ 49, 136 N.M. 348, 98 P.3d 998 (citation omitted). The evidence presented in this case is sufficient to support the finding that Defendant agreed with Martinez to commit the

crime and is inconsistent with Defendant's new theory that he was a mere hostage of Martinez. *See State v. Gonzales*, 2008-NMCA-146, ¶ 11, 145 N.M. 110, 194 P.3d 725 ("[T]he mere fact that the jury determined that [the d]efendant appeared in the surveillance footage . . . along with several other people presented strong circumstantial evidence to support its conclusion that [the d]efendant had, in fact, agreed with at least one of them to commit the burglaries."). We hold that the evidence in the record is sufficient to support Defendant's conviction for conspiracy to commit armed robbery.

**CONCLUSION**

For the foregoing reasons, we affirm Defendant's convictions.

**IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**RODERICK T. KENNEDY, Judge**